STATE of Wisconsin, Plaintiff-Respondent,

v.

Leonard HERNDON, Defendant-Appellant.

Court of Appeals

*No. 87–0357–CR. Submitted on briefs October 6, 1987.—
Decided May 3, 1988.*

(Also reported in 426 N.W.2d 347.)

91

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, by *Sally Wellman,* assistant attorney general, of Madison.

For the defendant-appellant the cause was submitted on the briefs of *Kenneth P. Casey,* assistant state public defender, of Madison.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

MOSER, P.J.   Leonard Herndon (Herndon) appeals from a conviction of third-degree sexual assault in violation of sec. 940.225(3), Stats. Herndon claims that he was denied his right to confrontation under the sixth amendment of the United States Constitution and article I, section 7 of the Wisconsin Constitution when he was denied the opportunity to cross-examine M.L.P., the juvenile complaining witness, about her prior arrests for prostitution. Herndon argues that an effective cross-examination was necessary to test M.L.P.'s credibility and to show her motive to fabricate the charge. Herndon also claims that he was denied his constitutional right to present witnesses in his own behalf. Herndon argues that the trial court erred in holding that Wisconsin's rape shield law, sec. 972.11(2), Stats., precluded any evidence of M.L.P.'s prior sexual conduct.

The sole issue on appeal is whether Herndon was denied his constitutional right to confrontation and right to present witnesses in his own behalf. We hold that he was and reverse the judgment of the trial court.

## FACTS

M.L.P. testified at a preliminary hearing that on March 24, 1986, at about 2 a.m., while she was

walking to her mother's home, Herndon sexually assaulted her in the 2400 block of North Martin Luther King Drive. M.L.P. testified that Herndon forced her into his automobile, drove her to a parking lot located near the intersection of Martin Luther King Drive and West Vine Street in the city of Milwaukee, and forced her to commit several acts of oral and vaginal intercourse. M.L.P. further testified that Herndon struck her in the eye and that he later drove his automobile to North 4th Street and West Clark Street and let her out. Based on this evidence, the court found that there was probable cause to believe that a sexual assault had occurred and that Herndon had committed it. Herndon was bound over for trial.

On the trial date, the trial court entertained Herndon's motion to have the rape shield law declared unconstitutional. Herndon presented the following written offer of proof with which the state joined:

### Offer of Proof

In support of the previously filed Motion to Admit Prior Sexual Conduct of the Complaining Witness, the defendant offers the following statement as to his theory of this case and the evidence he intends to adduce at the trial of this cause.

Leonard Herndon is charged with one count of Second Degree Sexual Assault, a violation of [sec.] 940.225(2)(a), Wis. Stats. The allegation is basically that Mr. Herndon accosted the prosecutrix, [M.L.P.], while she was walking in the 2400 block of North Martin Luther King Drive at approximately 3:00 a.m. on March 24, 1986. He is alleged to have forced her into his automobile and driven her to another location where he allegedly forced her to engage in several acts of sexual intercourse,

both oral and vaginal, without her consent. She variously claims that Mr. Herndon struck her either on Martin Luther King Drive or at the scene of the sexual acts depending upon who she spoke to after the matter was reported to the police.

After his arrest, later that morning, Mr. Herndon gave a statement to the police where he admitted picking up [M.L.P.] after she flagged him down while he was driving his car in the 2400 block of North Martin Luther King Drive at the time in question. He told the police that she told him that she was working and asked him if he had any money. He admitted driving her to another location where they engaged in the acts of intercourse she described. He admitted slapping her after she attacked him and bit him on the finger. He will testify that he believed that she was working as a prostitute and that the acts of sexual intercourse were consensual as acts of prostitution.

The evidence will also show that [M.L.P.] told the police that she had left her home about 1:45–2:00 a.m. to walk to her aunt's home to borrow some money because she was hungry and out of cigarettes. Her aunt was not home so she decided to walk back home and was accosted by the defendant as mentioned above. After the alleged assault, [M.L.P.] went home to her mother's apartment and told her mother that she had been assaulted by the defendant.

With this background, Mr. Herndon intends to offer as evidence at the trial of this case that [M.L.P.] was arrested on two prior occasions for engaging in acts of prostitution under circumstances similar to those described by Mr. Herndon to the police on the day of his arrest and the alleged offense, before he could have known of her

97

prior activities. Further, he intends to introduce evidence that [M.L.P.]'s mother, [C.P.], was aware of those prostitution arrests and strongly disapproved of her daughter's prostitution activities. The evidence will also show that [C.P.] had communicated her displeasure over such activities to her daughter before March 24, 1986. Finally, Mr. Herndon intends to introduce evidence that [M.L.P.] has in the past testified, under oath that the police officers who arrested her for these prior acts of prostitution are lying about her activities under oath.

Specifically, Mr. Herndon intends to adduce testimony that at 11:50 p.m. on August 27, 1985, at 2300 North 27th Street, Milwaukee, Wisconsin, [M.L.P.] waved to Milwaukee Police Officer George Papachristou who was driving his private automobile down that street. Officer Papachristou will testify that after pulling his auto over to the side of the road in this high prostitution area he was patrolling as part of an anti-prostitution unit, [M.L.P.] stated to him that she needed $20.00. He will testify that she offered to give him some "head" for $20.00 unless he wanted "pussy." She offered to "fuck and suck" for $40.00. Detective Orlen Wood will testify that he interviewed [M.L.P.] on August 28, 1985, and that she denied offering Officer Papachristou a "fuck and suck for $40.00." At Mr. Herndon's final probation revocation hearing on May 20, 1986, [M.L.P.] admitted speaking with Officer Papachristou and telling him that she was "dating." She denied, under oath, that she offered to "fuck and suck for $40.00."

With respect to the second prostitution arrest, Mr. Herndon will call Police Officer Michael Kulman. He will testify that on October 22, 1985 at 9:55 p.m. in the 2500 block of North Martin Luther King

Drive he was working with the anti-prostitution unit when [M.L.P.] made eye contact with him as he was driving his car. He will testify that the 2400–2500 block of North Martin Luther King Drive is also a high prostitution area. The 2400 block of that street is where Mr. Herndon first met [M.L.P.]. Officer Kulman will further testify that, after pulling his auto over to the curb, that [M.L.P.] asked him for $20.00. She offered to give the officer "head" for $20.00. She was arrested on the spot. Mr. Herndon will also call Milwaukee Police Detective Donald Peil who will testify that he interviewed [M.L.P.] that evening and that she admitted offering Officer Kulman "head" for $20,00 and that she knew that the term "head" meant oral sex. At the final revocation hearing mentioned above, [M.L.P.] denied, under oath, that she asked Officer Kulman for $20.00 or offered to give him "head." She also denied telling Detective Peil that she had offered Officer Kulman "head" and that she knew what that term meant.

[C.P.] will also be called to testify by Mr. Herndon. She will testify that she is [M.L.P.]'s mother and that when her daughter came home on March 24, 1986, she was yelling and screaming that she had been raped. She will also testify that she was aware of her daughter's prior arrests for prostitution because she went and picked her up at the police station after each arrest. She will testify that she told her daughter, in no uncertain terms that she did not approve of such activities before March 24, 1986.

From this review of the proposed testimony, it is clear that Mr. Herndon's theory of defense in this case will be that all acts of sexual intercourse between he [sic] and [M.L.P.] were consensual as acts of prostitution. Further, it will be part of his

99

theory of defense that [M.L.P.] was motivated to engage in acts of prostitution on March 24, 1986, because she needed money to buy food and cigarettes. Finally, it will be part of Mr. Herndon's theory of defense that [M.L.P.] is falsely accusing him of sexually assaulting her in order to explain the swelling and bruising on her face which resulted from Mr. Herndon's slaps. She is falsely accusing Mr. Herndon so that her mother will not punish her for continued prostitution activities.

The trial court, relying on sec. 972.11(2)(c), Stats., refused to allow any testimony or reference to M.L.P.'s prior sexual conduct.[1] After being advised of his rights, Herndon agreed to go ahead with the trial to the court and to allow the court to use the preliminary hearing evidence as the basis for its findings of fact and conclusions of law. Upon reading the preliminary hearing transcript, the court found Herndon guilty of second-degree sexual assault. Herndon was sentenced to an indeterminate term of four years incarceration to be served consecutively to the term he was then serving as a result of a parole revocation. It is from this judgment that Herndon appeals.

---

[1] In refusing to allow the evidence, the court stated:

Okay. Well, I find that if there were a situation, a factual situation which showed flexibility of the Rape Shield Law, these facts presented that situation because of [sic] the acts of the complainant were so analagous to the situation at hand but it is not for me to make that determination. The statute forecloses the evidence which you have proffered for being committed, and perhaps, if the defendant is convicted, the appellate court will have to take another look at the literal application of the law.

## A DEFENDANT'S CONSTITUTIONAL RIGHT TO CONFRONT ADVERSE WITNESSES AND PRESENT WITNESSES IN HIS BEHALF

The sixth amendment to the United States Constitution guarantees a defendant a fair trial by providing him with the right to cross-examine all witnesses against him.[2] "The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process'"[3] by revealing any possible biases, prejudices or ulterior motives of the witness.[4] The right is applicable to the states under the due process clause of the fourteenth amendment.[5]

Article I, section 7 of the Wisconsin Constitution also guarantees a defendant's right to confront adverse witnesses "face to face." The primary purpose of this right is to insure that the trier of fact has a satisfactory basis for evaluating the truthfulness of the evidence in a criminal case. Denial of the right of confrontation or diminution thereof calls into question the integrity of the fact finding process.[6]

The sixth amendment to the United States Constitution also guarantees a defendant the right to

---

[2] *See Chambers v. Mississippi,* 410 U.S. 284, 295 (1973).
[3] *Id.*
[4] *Davis v. Alaska,* 415 U.S. 308, 316 (1974).
[5] *Pointer v. Texas,* 380 U.S. 400, 405 (1965). Wisconsin has also recognized that the federal right of confrontation is applicable to the state under the fourteenth amendment. *Sheehan v. State,* 65 Wis. 2d 757, 764, 223 N.W.2d 600, 604 (1974).
[6] *State v. Bauer,* 109 Wis. 2d 204, 208–09, 325 N.W.2d 857, 859–60 (1982).

compulsory process of witnesses to testify in his behalf,[7] as does article I, section 7 of the Wisconsin Constitution. As the United States Supreme Court has stated, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense."[8] Thus, this right is also essential to due process[9] and is applicable to the states through the fourteenth amendment. A violation of this right may deprive the defendant of a fair trial.[10]

The United States Supreme Court, when addressing a state statute that impinges on confrontation and compulsory process rights, has resorted to a balancing test. In *Chambers v. Mississippi*,[11] the Court was confronted with the constitutionality of the application of Mississippi's voucher rule and hearsay rule in a murder case. The defendant, Chambers, wanted to cross-examine a witness concerning the witness's renunciation of his written confession to the murder. Chambers also wanted to elicit hearsay testimony of the witness' several oral confessions. The trial court disallowed the testimony on the basis of Mississippi's voucher and hearsay rules. The Supreme Court reversed, acknowledging that the right to cross-examine is not absolute and may, in appropriate cases, have to accommodate other legitimate state interests in the criminal trial process.[12] On balance, however, the state's interest in upholding its evidentiary rules did not outweigh the accused's right to defend himself by introducing the witness' oral confessions to the murd-

---

[7]*See Chambers*, 410 U.S. at 294.
[8]*Id.* at 302.
[9]*Id.* at 294.
[10]*See id.* at 302–03.
[11]410 U.S. 284 (1973).
[12]*Id.* at 295.

er,[13] and by cross-examining the witness with respect to his renunciation of his written confession.[14]

This balancing test set forth in *Chambers* was employed in *Davis v. Alaska*,[15] where the state's interest in a statute protecting the confidentiality of a juvenile's delinquency record was much more compelling. Davis, charged with burglary and grand larceny, was denied the opportunity to cross-examine a key prosecution witness concerning his probationary status as a juvenile delinquent. Davis was attempting to show that the juvenile, fearful of jeopardizing his probation, might have made a hasty and incorrect identification of Davis either to shift suspicion away from himself or to curry favor with the police.[16]

The Court, in weighing the state's interest against Davis' right to cross-examine, looked at two key factors in Davis' favor. First, the juvenile was the prosecution's crucial witness. The accuracy and truthfulness of his statements were key elements in the state's case.[17] Second, Davis' attempted cross-examination was not a general attack on the witness' character. Rather, it was aimed at revealing "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand."[18]

After weighing the issues, the Court concluded that, while a trial court normally has a duty to protect witnesses from cross-examination that serves to harass, annoy or humiliate, that protection does not

---

[13]*Id.* at 302–03.
[14]*Id.* at 298.
[15]415 U.S. 308 (1974).
[16]*Id.* at 311.
[17]*Id.* at 317.
[18]*Id.* at 316.

extend to cross-examination intended solely to discredit the witness.[19] Whatever temporary embarrassment might result to the juvenile and his family from the disclosure of his juvenile record, that embarrassment was outweighed by Davis' right to "probe into the influence of possible bias in the testimony of a crucial identification witness."[20]

## RAPE SHIELD LAWS AND DEFENDANTS' RIGHTS

Rape shield laws have been enacted by almost every state.[21] Generally speaking, these laws deny a defendant in a sexual assault case the opportunity to examine the complainant concerning her prior sexual conduct or reputation. They also deny the defendant the opportunity to offer extrinsic evidence of the prior sexual conduct or reputation[22] of the complainant.

---

[19]*Id.* at 320 (citing *Alford v. United States,* 282 U.S. 687, 694 [1931]).

[20]*Id.* at 319.

"Bias," which an effective cross-examination may expose, is defined as

> the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*United States v. Abel,* 469 U.S. 45, 52 (1984).

[21]E. Cleary, *McCormick on Evidence* sec. 193, at 573 (3d ed. 1984) [hereinafter *McCormick*].

[22]All references in this opinion to the complainant's reputation refer to her reputation for sexual conduct or practices.

Rape shield laws were implemented to overcome the invidious and outrageous common law evidentiary rule allowing complainants to be asked in depth about their prior sexual experiences for the purpose of humiliation and harassment and to show unchastity.[23] These statutes reflect the judgment that most evidence about chastity has far too little probative value on the issue of consent to justify extensive inquiry into the victim's sexual history.[24]

Professor Harriett R. Galvin, in her survey of the nation's rape shield laws, has categorized the various types of legislation into four approaches: the Michigan, Texas, federal and California approaches.[25] Wisconsin is one of the twenty-five states modeled on the Michigan approach.[26] In determining the constitutionality of sec. 972.11(2), Stats., it is clear that the statute must be analyzed in light of the balancing test utilized in *Davis*. For this reason, we feel that a survey of how other jurisdictions in each of the four approaches have applied the *Davis* test in analyzing their own rape shield laws would be beneficial.

*The Michigan Approach*

The rape shield laws which follow the Michigan approach are general prohibitions on prior sexual conduct or reputation evidence but have highly specif-

[23]For a criticism of the common law rule which rape shield laws attempted to abrogate, *see* Ordover, *Admissibility of Patterns of Similar Sexual Conduct: The Unlamented Death of Character for Chastity*, 63 Cornell L. Rev. 90, 91–110 (1977–78).

[24]*McCormick, supra* note 21, sec. 193, at 574.

[25]Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn. L. Rev. 763, 773 (1985–86) [hereinafter Galvin].

[26]*Id.* at 908–11. *See also State v. Vonesh*, 135 Wis. 2d 477, 488–89, 401 N.W.2d 170, 176 (Ct. App. 1986).

ic exceptions allowing for this evidence in those circumstances in which it is highly relevant and material to the presentation of a defense and therefore constitutionally required.[27] Application of the rape shield laws of Massachusetts, Virginia, Illinois, Ohio and Michigan typify the Michigan approach to excluding prior sexual conduct or reputation evidence.

Under the Massachusetts rape shield law, evidence of prior sexual conduct is generally prohibited.[28] Exceptions are made for prior consensual acts with the defendant or recent conduct of the complainant which would explain her physical features, characteristics or conditions. The evidence must first be submitted to the trial court in an in camera hearing so that the court may weigh the relevancy of the evidence against its prejudicial effect on the victim.[29]

In 1981, the Massachusetts Supreme Court decided the case of *Commonwealth v. Joyce.*[30] In *Joyce,* the defendant wanted to introduce evidence that the complainant had been charged with prostitution on two previous occasions when she had been found naked having sex in an automobile. The defendant, who was found in a similar situation with the complainant, wanted to introduce the evidence to show that the woman's testimony was biased by her desire to avoid further prosecution. The court recognized that prostitution and lack of chastity are generally inadmissible.[31] Nevertheless, the court, citing the *Davis* balancing test, held that the defendant had the constitutional right to cross-examine the complainant

[27]Galvin, *supra* note 25, at 812.
[28]Mass. Gen. Laws Ann. ch. 233, sec. 21B (West 1986).
[29]*Id.*
[30]415 N.E.2d 181 (Mass. 1981).
[31]*Id.* at 185.

to show possible bias or motive to lie and that the general evidentiary rule of exclusion must give way to this right.[32]

In *Commonwealth v. Elliot*,[33] the high court held that the trial court erred in refusing to allow evidence that the complaining witness sued the apartment complex where the alleged rape took place for its negligence in failing to protect her.[34] Because the institution of a civil suit, while entirely legitimate, can create financial motive for the victim to falsify testimony in order to secure a criminal conviction, the defendant in that case had a right to probe such matters to reveal a witness' bias and personal interest.[35] Both these Massachusetts cases hold that where the complainant has a motive to lie, the constitution requires that the defendant be given an opportunity to expose that motive.

Illinois' rape shield law provides that evidence of the prior sexual activity or reputation of a complainant is generally inadmissible unless it concerns sexual conduct between the claimant and the accused. However, even this evidence must first be ruled admissible in an in camera hearing.[36]

The policy underlying this rape shield law, like Wisconsin's, is four-fold. First, the law prevents the defendant from harassing and humiliating the complainant with evidence of either her reputation for chastity or of specific prior sexual acts. Second, this type of evidence generally has no bearing on whether the complainant consented to sexual conduct with the

[32]*Id.* at 187.

[33]473 N.E.2d 1121 (Mass. 1985).

[34]*Id.* at 1123–24.

[35]*Id.* at 1124.

[36]Ill. Ann. Stats. ch. 38, sec. 115–7 (West Supp. 1987).

defendant at the time in question. Third, exclusion of the evidence keeps the jury focused only on issues relevant to the case at hand. Finally, the law promotes effective law enforcement because a victim will more readily report and testify in sexual assault cases if she does not fear that her prior sexual conduct will be brought before the public.[37]

In 1982, the Illinois Court of Appeals decided the case of *People v. Buford.*[38] In *Buford,* the defendant sought to introduce evidence of the complainant's conviction for prostitution seven years earlier and of her conviction for mail fraud one year earlier. Buford claimed that since the complainant was still on probation for the mail fraud conviction, she had a motive to fabricate the sexual assault. The court stated that the defendant had not shown a link connecting the convictions, the complainant's status as a probationer and the sexual assault case so as to show a motive to fabricate the charges. After analyzing the facts under *Davis,* the court ruled that the prior convictions were inadmissible because the exclusion of the evidence did not infringe upon the defendant's constitutional rights.[39]

In *People v. Hughes,*[40] the Illinois Court of Appeals reaffirmed the statute prohibiting the use of prostitution evidence. The defendant desired to introduce

---

[37]*People v. Ellison,* 463 N.E.2d 175, 183–84 (Ill. App. 1984).

[38]441 N.E.2d 1235 (Ill. App. 1982).

[39]*Id.* at 1239–40. The court went on to state that even if the law as applied worked a denial of Buford's confrontation rights or that the statute was invalid on its face, the court was not required to reverse the trial court because the error was harmless. Even if the evidence had been admitted, there was no reasonable doubt that Buford would have been convicted. *Id.* at 1240.

[40]460 N.E.2d 485 (Ill. App. 1984).

evidence that the complainant was a prostitute. He argued that this evidence would show that the complainant had fabricated the charges because they had a "business arrangement" whereby the defendant was the complainant's pimp. When the complainant failed to abide by this agreement, an argument ensued resulting in the complainant falsely accusing the defendant of rape.[41] The court stated that while the rape shield law would not prevent the defendant from using this type of evidence to attack the complainant's credibility or veracity, the evidence could not be used merely to humiliate and harass her.[42] Since the sole reason for the defendant's use of the evidence was to "come in and show that she [complainant] was in the business of being a prostitute," the court ruled the evidence inadmissible.[43] These Illinois cases make it clear that where the evidence is to be used solely to inform the jury that the complainant is a prostitute, the evidence is not constitutionally required to be admitted.

Virginia's rape shield law proscribes any reputation or opinion evidence of the complainant's unchaste character or prior sexual conduct. Unless the complainant agrees otherwise, evidence of specific instances of prior sexual activity is admitted only if it is relevant and it is (1) used to explain the presence of semen, pregnancy, disease, or physical injury to the complainant, (2) used to show prior sexual conduct between the complaining witness and the defendant to establish consent, or (3) used to rebut prosecution

---

[41]*Id.* at 489.
[42]*Id.* at 491.
[43]*Id.*

evidence of the complainant's prior sexual conduct.[44] Evidence of the complainant's prior sexual conduct used to show her proclivity to fabricate the charge against the defendant can be introduced if the defendant files a written motion prior to the preliminary hearing or trial.[45] In any case where evidence of sexual conduct is to be admitted, the trial court must first rule on its admissibility after an evidentiary hearing.[46]

In *Winfield v. Commonwealth*,[47] the defendant filed a pretrial notice stating that the complainant had a motive to fabricate because she was extorting $50 from the defendant for sexual relations. The notice also stated that male witnesses would testify that they had paid the complainant for sex and that she had a reputation in the community for unchaste and immoral conduct. Moreover, two women would testify that the complainant had told them of having engaged in sexual conduct for money with other men. Another man would testify that the complainant had sex with men and then told their wives or girlfriends so as to cause trouble. The trial court ruled all this evidence inadmissible to show a motive to fabricate.[48]

The supreme court reversed the trial court's ruling. The court stated preliminarily that "no legislation, however salutary its purpose, can be so construed as to deprive a criminal defendant of his Sixth Amendment right to confront and cross-examine his accuser and to call witnesses in his defense."[49] The

[44]Va. Code Ann. sec. 18.2–67.7A (1982).
[45]Va. Code Ann. sec. 18.2–67.7B (1982).
[46]Va. Code Ann. sec. 18.2–67.7C (1982).
[47]301 S.E.2d 15 (Va. 1983).
[48]*Id.* at 17–18.
[49]*Id.* at 19 (citing *Davis*).

court then held that while the bad community reputation was properly excluded, the record reflected that the complainant's past sexual conduct exhibited a distinctive pattern of extorting money after acts of prostitution.[50] Since the evidence showed a distinct pattern of behavior which directly related to the conduct charged against the complainant, it was relevant, probative and admissible.[51] The court concluded that there was sufficient nexus between the complainant's past conduct of extortion and the defendant's claim of defense to render such evidence relevant and probative of a motive to fabricate.[52]

Ohio's rape shield law proscribes evidence of the prior sexual activity and reputation of the victim unless it involves evidence of the origin of semen, pregnancy, or disease or the victim's past sexual conduct with the defendant. Even this evidence must first be submitted to the court for a finding that the evidence is material to a fact issue in the case and its inflammatory or prejudicial nature does not outweigh its probative value.[53]

In *State v. Gardner*,[54] the Ohio Supreme Court reviewed and applied the *Davis* balancing test in ruling on the admissibility of evidence of the complainant's prostitutional acts or reputation.[55] The court affirmed the trial court's refusal to allow testimony of a defense witness that the witness had been solicited by the complainant for sex. The court also affirmed a refusal to allow testimony of the

[50]*Id.* at 20.
[51]*Id.* at 21.
[52]*Id.*
[53]Ohio Rev. Code Ann. sec. 2907.02(D) (Anderson 1987).
[54]391 N.E.2d 337 (Ohio 1979).
[55]*Id.* at 340–41.

complainant's reputation as a prostitute. This testimony was proffered to establish consent on the part of the complainant and to impeach her credibility. The defendant argued that the evidence was relevant because the complainant's unchastity indicated a likelihood of consent to have sex with the defendant.[56]

In balancing the state interest against the probative value of the excluded evidence, the court recognized that three interests were being served by the law: (1) the law discourages trying the victim rather than the defendant; (2) the law encourages the reporting of rapes and thus aids in crime prevention; and (3) by excluding unduly inflammatory and prejudicial evidence when such evidence is only marginally probative, the law aids in the truth-finding process.[57]

The court concluded that while there might be circumstances when testimony of prior sexual conduct with others is probative, such circumstances were not present in *Gardner*. However, the court intimated that if the defendant could have shown that "financial arrangements were entered into for sexual activities," the court may have allowed the evidence in.[58]

In *State v. Williams*,[59] the complainant testified on direct and on cross-examination that she would not have voluntarily had sex with the defendant because she was a lesbian. The court distinguished this case from *Gardner* on the grounds that the evidence offered in *Gardner* was used solely for impeachment and was only marginally probative of consent.[60] Here,

[56]*Id.* at 341.

[57]*Id.* at 340.

[58]*Id.* at 341.

[59]477 N.E.2d 221 (Ohio App. 1984), *aff'd,* 487 N.E.2d 560 (Ohio 1986).

[60]*Id.* at 227.

lesbianism and the resulting lack of consent was a material issue of the state's case. The evidence offered by the defendant would tend to show that the complainant was lying when she claimed to be a lesbian who would never have consensual sex with a man. "This evidence would go to the very heart of the issue of consent, the only issue contested at trial."[61] The refusal to allow this highly probative, material and relevant evidence violated the defendant's confrontation rights which, in this instance, outweighed the state's interest in its rape shield law.[62]

In Michigan, evidence of a victim's sexual reputation or prior sexual conduct is strictly prohibited unless it is used to show prior sexual conduct with the defendant, or to show the source of the victim's physical evidence of sexual activity.[63] Again, an in camera hearing must be held so that a court may weigh the inflammatory or prejudicial nature of the evidence against its probative value.[64]

In *People v. Hackett,*[65] the Michigan supreme court, while upholding a sexual assault conviction, explicated the constitutional dimensions of Michigan's rape shield law as juxtaposed to sixth amendment confrontation rights. The court recognized that in a vast majority of cases, evidence of a complainant's prior sexual conduct with others or evidence of unchaste reputation is inadmissible. The court stated that "neither the Sixth Amendment Confrontation Clause, nor due process, confers on a defendant an

[61]*Id.* at 228.
[62]*Id.* at 228.
[63]Mich. Comp. Laws Ann. sec. 750.520j(1) (West Supp. 1987).
[64]Mich. Comp. Laws Ann. sec. 750.520j(2) (West Supp. 1987).
[65]365 N.W.2d 120 (Mich. 1984).

unlimited right to admit all relevant evidence or cross-examine on any subject."[66]

The court, in summarizing the constitutionally required exceptions to a rape shield law, stated:

> The fact that the Legislature has determined that evidence of sexual conduct is not admissible as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible. We recognize that in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation. For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. Moreover in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. Additionally, the defendant should be permitted to show that the complainant has made false accusations of rape in the past.[67]

In any case, the weighing of the probativeness of the evidence against its prejudicial effect should be left to the discretion of the trial court, who must keep in mind the salutary policy purposes framing the rape shield law exclusions.[68]

*The Texas, Federal and California Approaches*

The rape shield laws written under the Texas, federal and California approaches each vary in their

---

[66]*Id.* at 124.

[67]*Id.* at 124–25 (citations omitted).

[68]*Id.*

provisions from the laws written under the Michigan approach. Nevertheless, the application of the *Davis* balancing test as well as the ultimate result concerning the admissibility of prior sexual conduct or reputation evidence is often very similar.

The laws written under the Texas approach are purely procedural in nature and often involve "untrammeled judicial discretion."[69] For instance, Arkansas' rape shield law provides that, notwithstanding a general prohibition of opinion, reputation or specific sexual conduct evidence, evidence of the complainant's prior sexual conduct with the defendant or any other person may be used provided certain procedures are followed and the trial court determines that the probativeness of the evidence outweighs its prejudicial nature.[70]

In *Marion v. State,*[71] the defendant argued that no sexual intercourse between the victim and himself had occurred. As part of his defense, the defendant sought to introduce evidence of a fight which took place between the victim and the defendant because the defendant had contracted venereal disease from the victim. At the time of the fight, the victim stated that she would "get even with him." The sexual assault charge resulted.[72] The trial court refused to allow the evidence before the jury.

The supreme court reversed stating that if the statute absolutely barred evidence of a victim's prior sexual conduct, it may be unconstitutional under

[69] Galvin, *supra* note 25, at 876.
[70] Ark. Stat. Ann. sec. 16–42–101 (1987).
[71] 590 S.W.2d 288 (Ark. 1979).
[72] *Id.* at 290.

*Davis.*[73] The court then held that the trial court's refusal to allow the defendant to cross-examine the victim concerning the venereal disease was a violation of the defendant's constitutional right of confrontation to show the witness' "possible biases, prejudices or ulterior motives" as they relate to the case at hand.[74]

Oregon's rape shield law[75] is a good example of the federal approach. This approach has three key features: (1) a general prohibition of sexual conduct or reputation evidence; (2) exceptions allowing for this evidence in circumstances where the evidence is undeniably relevant to an effective defense; and (3) a general "catch-basin" provision allowing for the introduction of relevant evidence on a case-by-case basis.[76]

In *State v. Jalo,*[77] the defendant sought to introduce evidence of the twelve-year-old complainant's sexual encounters with other school boys and with her uncle. The defendant offered to prove that the girl was falsely accusing the defendant because he threatened to tell her parents of the girl's sexual past. Thus, the defendant wanted his son to testify about the son's sexual relations with the complainant.

After citing *Davis,* the court held that the trial court improperly excluded the evidence.[78] Because the evidence was not inherently incredible, and because it went to the issue of the witness' motive to fabricate, *Davis* required that the policy of the rape shield law

[73]*Id.*
[74]*Id.*
[75]Or. Rev. Stat. sec. 40.210 (1987).
[76] Galvin, *supra* note 25, at 883–84.
[77]557 P.2d 1359 (Or. App. 1976).
[78]*Id.* at 1362.

116

must "be subordinated to the defendant's constitutional right to confrontation."[79]

The key feature of the California approach is that the sexual conduct or reputation evidence is separated into two categories. Evidence offered to prove consent is generally inadmissible unless the evidence concerns prior sexual conduct between the complainant and the defendant.[80] However, any sexual conduct or reputation evidence may be used to attack the complainant's credibility as long as the trial court determines that it is relevant to the issue.[81]

In *People v. Varona*,[82] the complainant testified that a friend drove her to within two blocks of her bus stop. While walking to the bus stop, the defendants allegedly attacked her and forced her to a nearby house. Once there, they allegedly forced her to perform vaginal and oral intercourse with them. The defendants stated that the complainant had voluntarily gone to the house and engaged in the sexual conduct, but became enraged when she discovered that the defendants had no money to pay her. The trial court excluded evidence that the complainant was currently on probation for prostitution.[83]

The court of appeals reversed, noting that the record showed that not only was the woman a prostitute, but that she walked the streets of that area to solicit customers and that she not only engaged in "normal" intercourse for money, but that she "special-

---

[79]*Id.* at 1361–62.

[80]Galvin, *supra* note 25, at 894; Cal. Evid. Code sec. 1103(b)(1), (2) (West Supp. 1988).

[81]Galvin, *supra* note 25, at 894; Cal. Evid. Code sec. 782 (West Supp. 1988).

[82]143 Cal. App. 3d 566, 192 Cal. Rptr. 44 (App. 1983).

[83]*Id.* at 569, 192 Cal. Rptr. at 45.

ized in oral copulation."[84] Thus, this evidence was very relevant to the issue of consent and should have been admitted.

As with the Michigan approach, these cases show that where the evidence is probative of a complainant's bias or prejudice, or tends to show that she has a motive to fabricate the charge or shows a distinct pattern of conduct, the defendant must be allowed, in order to preserve his constitutional rights, to have this evidence shown to the jury.

### Wisconsin's Rape Shield Law

As we have stated, Wisconsin has followed the Michigan approach in formulating its rape shield law. Both statutes allow a defendant to prove prior consensual sexual activity between the complainant and the defendant, both allow physical consequences evidence showing the presence of semen, pregnancy or disease, and both require a hearing before trial and outside the presence of the jury to allow the court to weigh the probative value of the evidence against its prejudicial effect.[85] Wisconsin also has an exception allowing for

---

[84]*Id.* at 569–70, 192 Cal. Rptr. at 46.

[85]Section 972.11, Stats., states in part:

(2)(a) In this subsection, "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style.

(b) If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

1. Evidence of the complaining witness's past conduct with the defendant.

2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

(c) Notwithstanding s. 901.06, the limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness in par. (b) applies regardless of the purpose of the admission or reference unless the admission is expressly permitted under par. (b) 1, 2 or 3.

Section 971.31, Stats., states in part:

(1) Any motion which is capable of determination without the trial of the general issue may be made before trial.

. . . .

(11) In actions under s. 940.225, evidence which is admissible under s. 972.11(2) must be determined by the court upon pretrial motion to be material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial.

Compare Mich. Comp. Laws Ann. sec. 750.520j, (West Supp. 1987) (footnote omitted) which states:

750.520j. Admissibility of evidence

Sec. 520j. (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under

evidence of the complainant's prior false rape charges.[86]

On March 1, 1983, the Wisconsin Supreme Court decided the case of *State v. Gavigan.*[87] The court stated that this statute's proscription of prior sexual conduct evidence was a legislative determination that, under usual circumstances, evidence of a complaining witness' prior sexual conduct has low probative value but high prejudicial effect. Therefore, such testimony may be admitted solely for statutorily permissible purposes after close judicial scrutiny.[88] The court then held that, although the evidence did not fall squarely into the statute's exceptions, the unusual circumstances of the case required that the rape shield law bend to allow the state to introduce evidence of the woman's virginity.[89] Two and one-half months later, the legislature amended the law to prohibit any such evidence unless expressly allowed by the statute.[90]

In *Milenkovic v. State,*[91] this court held that evidence tending to show that a person acts in

subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

[86]Sec. 972.11(2)(b)3, Stats.

[87]111 Wis. 2d 150, 330 N.W.2d 571 (1983).

[88]*Id.* at 157 n. 2, 330 N.W.2d at 576 n. 2.

[89]*Id.* at 159–61, 330 N.W.2d at 576–78.

[90]Sec. 972.11(2)(c), Stats., enacted by 1983 Wis. Act 449, states: "Notwithstanding s. 901.06, the limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness in par. (b) applies regardless of the purpose of the admission or reference unless the admission is expressly permitted under par. (b) 1, 2 or 3."

[91]86 Wis. 2d 272, 272 N.W.2d 320 (Ct. App. 1978).

accordance with his or her character upon a particular occasion is generally irrelevant. However, where the character of the witness is a consequential material proposition, or if the evidence is used for impeachment purposes, it may be relevant.[92] Character evidence generally is of slight probative value and may be very prejudicial because it distracts the fact finder from its goal of ascertaining what actually happened on a particular occasion. "It subtly permits the trier of the fact to reward the good ... and to punish the bad ... because of their respective characters despite what the evidence in the case shows actually happened."[93]

In *Milenkovic,* we relied on the supreme court decision in *State v. Stanislawski.*[94] We stated that *Stanislawski* overruled the longstanding common law rule that unchaste women were more likely to consent to an act of sexual intercourse than those who were virtuous.[95] We therefore held that evidence of chastity reputation was irrelevant because it is not a pertinent trait of character of a rape victim to be used in inquiring into credibility.[96] We also held that the prior sexual conduct of a complainant was inadmissible for impeachment purposes unless it involved nonremote acts between the complainant and the defendant.[97]

An exception to this general rule was recognized by *Milenkovic.* We stated that other crimes, wrongs

---

[92]*Id.* at 278, 272 N.W.2d at 323.

[93]*Id.*

[94]62 Wis. 2d 730, 216 N.W.2d 8 (1974). It should be noted that both *Stanislawski* and *Milenkovic* involved factual situations occurring *before* the adoption of Wisconsin's rape shield law in 1976.

[95]*Milenkovic,* 86 Wis. 2d at 279, 272 N.W.2d at 324.

[96]*Id.* at 281, 272 N.W.2d at 324–25.

[97]*Id.*

and acts may be introduced as evidence to prove intent, plan or motive, despite the fact that its use may impinge on normal evidentiary opposition to general character evidence.[98] Such evidence must first be presented to the trial court by an offer of proof[99] so that the court may weigh its probativeness against any possible prejudice in accordance with *Davis*.[100]

Our holding in *Milenkovic* is based upon the time-honored evidentiary rule that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith.[101] Such evidence, however, may be employed to show bias and proof of motive to fabricate.[102]

Professor Abraham P. Ordover stated that the federal courts apply a five-pronged test to the use of other crimes, wrongs, or acts evidence. Evidence of these acts is admitted only if: (1) there is a clear showing that the defendant [complainant] committed the prior acts; (2) the circumstances of the prior acts

[98]*Id.* at 282, 272 N.W.2d at 325; *see also* secs. 901.03(1)(b), (2) and (3) and 904.04(1), (2), Stats.

[99]*State v. Padilla,* 110 Wis. 2d 414, 429, 329 N.W.2d 263, 271 (Ct. App. 1982).

[100]Our supreme court has acknowledged the balancing test set forth in *Davis. Id.* at 428, 329 N.W.2d at 270.

[101]*See Melenkovic,* 86 Wis. 2d at 277–82, 272 N.W.2d at 323–25; 2 J. Weinstein and M. Berger, *Weinstein's Evidence* 404[08] (1986); sec. 904.04(2), Stats.

[102]*See* 2 J. Weinstein and M. Berger, *Weinstein's Evidence* 404[08] (1986); *see also State v. Lenarchick,* 74 Wis. 2d 425, 446–48, 247 N.W.2d 80, 90–93 (1976); Presiding Judge Gartzke's concurring opinion in *Vonesh,* 135 Wis. 2d at 492, 401 N.W.2d at 177 (Gartzke, J., concurring); 3A J. Wigmore, *Wigmore on Evidence,* sec. 940 (1970); *McCormick, supra* note 21, sec. 40, at 85–89.

closely resemble those of the present case; (3) the prior act is clearly relevant to a material issue, such as identity or intent [or bias]; (4) the evidence is necessary to the prosecution's [defendant's] case; and (5) the probative value of the evidence outweighs its prejudicial effect.[103] Ordover adds a sixth element that a single past act is not probative of present acts; only related patterns of behavior should be admissible.[104]

This analysis applies to rape cases where consent is in issue. Convincing proof linking the complainant with specific prior acts would eliminate irrelevant character or reputation evidence concerning the details of prior conduct.[105] By allowing only clearly related testimony relevant to consent, totally dissimilar and remote conduct would be excluded. Moreover, limiting the testimony to only that necessary to the defendant's theory of consent would allow the trial court to consider only the consent issue without abusing its discretion by wholesale allowance of totally irrelevant prior sexual conduct.[106] Finally, the requirement that the probative value of the evidence outweigh any prejudice would eliminate unfair questioning designed primarily to harass and embarrass the witness and to arouse any sentiments that the fact finder may have against the complainant.[107]

---

[103]Ordover, *supra* note 23, at 113. We have added the material in brackets because the statutory provisions excluding evidence of other crimes, wrongs or acts do not differentiate between defendants, complainants or other witnesses. We see no justification for such a differentiation.

[104]*Id.* at 114.

[105]*Id.* at 113–14.

[106]*Id.* at 114.

[107]*Id.*

In *State v. Droste*,[108] our supreme court rejected an offer of proof that the defendant had a witness who would testify that he had sexual intercourse with the complainant five or six times prior to the alleged assault. The defendant argued that he had a sixth amendment right to test the complainant's credibility because the complainant, an undercover narcotics agent, had used sexual relations to further her drug investigations. Thus, the testimony was to be used to show bias and motivation to testify falsely. Our supreme court held that the defendant's claim of bias and *modus operandi* affecting credibility in this manner was not relevant because the facts surrounding the previous sexual encounters were not sufficiently similar to the facts surrounding the sexual assault. Therefore, the rape shield law prohibited their admission.[109]

In *State v. Penigar*,[110] the defendant was charged with second-degree sexual assault causing a venereal disease. In accordance with sec. 972.11(2), Stats., the prosecution was allowed to put forth evidence of the complainant's virginity to show that the defendant had caused the disease. However, when the charge was amended to third-degree sexual assault, the evidence of virginity no longer came under any exception to the rape shield law. Despite a curative instruction given by the trial court, the supreme court held that the evidence of virginity, later proven false, was highly prejudicial and ordered a new trial.[111] The court stated:

[108]115 Wis. 2d 48, 339 N.W.2d 578 (1983).
[109]*Id.* at 57–58, 339 N.W.2d at 582–83.
[110]139 Wis. 2d 569, 408 N.W.2d 28 (1987).
[111]*Id.* at 585–86, 408 N.W.2d at 36.

124

We conclude that the prosecution used the complainant's testimony about her lack of prior sexual experience in exactly the manner that caused the courts and the legislature to bar such evidence. The prosecution used the testimony about her lack of prior sexual experience to prove that the victim did not consent. This testimony was not probative of the issue of consent and was highly prejudicial.

Upon reading the record we conclude that the case hinged on false and inadmissible testimony about the complainant's lack of prior sexual experience. When consent is a determinative issue in a rape trial and the jury's decision on consent turns on testimony about the complainant's lack of prior sexual experience which is both false and inadmissible under the rape shield law, the jury is rendered unable to evaluate the testimony of the complainant and the defendant—whose credibility were the crucial aspects of the trial—because inadmissible, highly prejudicial and false evidence pervaded the course of the trial. Thus we conclude that the real controversy was not fully tried because "'the circumstances of the trial prevented a fair trial of the factual issues of the case.'"[112]

Since their creation, rape shield laws have generally passed constitutional muster despite challenges based upon the sixth amendment rights to confront adverse witnesses and present evidence in a defendant's behalf. Courts have almost always held that these rights are not absolute, and that evidence of the prior sexual conduct of the complainant is only marginally relevant. Because the probativeness of the evidence is so minuscule when weighed against the potential prejudice to the complaining witness that

[112]*Id.*

the receipt of such evidence may engender in the fact finders, the sixth amendment rights must bend to protect the innocent victims. On the other hand, the courts have also universally held that both cross-examination and witnesses brought on behalf of the defendant may show prior consensual sex if that evidence shows a complainant's unique pattern of conduct similar to the pattern of the case at hand or shows that the complainant may be biased or have a motive to fabricate the charges. In such cases, the issues of a witness' bias and credibility are not collateral, and the rape shield laws must give way to the defendant's sixth amendment rights.

## THE CONSTITUTIONALITY OF SECTION 972.11(2), STATS.

In the case before us, Herndon desired to cross-examine M.L.P. concerning her two prior arrests for prostitution. Herndon also wanted to elicit the testimony of the two police officers who had arrested M.L.P. for prostitution to show a continuing pattern by M.L.P. in the manner in which she solicited men. Finally, Herndon wanted to introduce the testimony of M.L.P.'s mother to show that she knew of M.L.P.'s prior prostitution arrests and that she vehemently opposed M.L.P.'s conduct.

Herndon claims that his offer of proof set forth sufficient facts to allow him to prove that: (1) M.L.P. consented to sexual intercourse as an act of prostitution; (2) M.L.P. was motivated to perform an act of prostitution because she needed money for food and cigarettes; and (3) M.L.P. fabricated the rape charge to explain her bruises so that her mother would not punish her for her continued prostitution.

Our scope of review is limited when the constitutionality of a statute is challenged.[113] Statutes are presumed constitutional and will be struck down only if it appears the statute is unconstitutional beyond a reasonable doubt.[114] The burden of establishing the unconstitutionality of a statute is on the person attacking it.[115] If there is any reasonable basis upon which the legislation may constitutionally rest, courts must assume that the legislature had such basis in mind and passed the act accordingly.[116] Courts do not consider the economic, social, and political matters dealt with in a statute.[117] They are also not concerned with the merits of the legislation under attack, nor with its wisdom. Rather, courts are concerned only when the statute clearly contravenes some constitutional provision.[118]

This deference given to the legislature is especially strong in a case like this. There is a strong state policy interest in foreclosing defendants from interrogating witnesses about the prior consensual sexual conduct of a complainant in a sexual assault case. Both the common law and the legislatively created rape shield laws have rejected the ignoble, outmoded and unfounded prior belief that an unchaste woman is more likely to consent to sex than a chaste woman. The courts and the legislature have determined that

---

[113]*State ex rel. Grand Bazaar Liquors, Inc. v. City of Milwaukee,* 105 Wis. 2d 203, 208, 313 N.W.2d 805, 808 (1982).

[114]*State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973).

[115]*Id.* at 46, 205 N.W.2d at 793.

[116]*Id.*

[117]*Id.*

[118]*Id.* at 46–47, 205 N.W.2d at 793.

this outdated rule detracted the fact finder from its goal of determining what actually occurred in the specific case before the court. Rather, juries were relying on wholly irrelevant evidence to punish the complainant, whose character was besmirched by evidence of prior consensual sexual encounters

Another strong policy interest which the rape shield law seeks to protect is the encouraging of complainants to come forward without fear that their private lives may be opened to public scrutiny. By making evidence of prior sexual conduct inadmissible, complainants will be more likely to come forward and law enforcement will be made easier. In most cases, these social policy considerations established by both the legislature and our courts far outweigh any claimed relevance of prior sexual conduct in establishing consent as a defense. We therefore hold that Herndon has failed to prove that sec. 927.11(2)(a) and (b), Stats., is unconstitutional.

Herndon has, however, met his burden of proof with regard to sec. 972.11(2)(c), Stats. The balancing test enunciated in *Davis* and analyzed and applied in many jurisdictions, only a few of which we have previously discussed, requires that where the evidence to be admitted is probative of the complainant's bias or prejudice, shows that she has a motive to fabricate, or shows a continuing pattern of conduct, the trial court must balance the probativeness of the evidence against its prejudicial nature. A refusal to allow this evidence in all cases based solely upon an evidentiary rule is a violation of the defendant's sixth amendment rights to confront adverse witnesses and present witnesses in his own behalf.

128

Applying the *Davis* balancing test to the present case, we hold that whatever temporary embarrassment might be caused to M.L.P. or her mother by disclosure of her past prostitution arrests is outweighed by Herndon's right to probe into the influence of possible bias or motive to lie in the testimony of the complaining witness. The offer of proof sets forth sufficient facts that, if believed by the jury, may discredit M.L.P. and show that she had a motive to fabricate the charges against Herndon. While the jury may choose not to accept these facts as true, they are "entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [M.L.P.'s] testimony which provided 'a crucial link in the proof ... of [Herndon's] act.'"[119] We therefore reverse Herndon's conviction and remand this case back to the trial court with instructions to hold a hearing pursuant to sec. 971.31(11), Stats., to determine if the facts alleged by Herndon in his offer of proof can be shown. If these facts can be shown, the trial court is to analyze the evidence using Professor Ordover's six-pronged test which we have earlier set forth.[120] If the evidence passes such an analysis, Herndon is to be allowed to present this evidence to the fact finder in a new trial.

We note that we are forced by *Davis* and its progeny to declare sec. 972.11(2)(c), Stats.,[121] unconstitutional because its prohibition is absolute. It does not

[119]*See Davis*, 415 U.S. at 317.

[120]*See supra*, text accompanying notes 104–05.

[121]Our decision that sec. 972.11(2)(c), Stats., is unconstitutional does not affect any other provision of sec. 972.11(2). Sec. 990.001(11), Stats.

allow a court to balance the competing interests as is required by *Davis*. Since the rights granted by the constitution are not couched in absolute terms, no statute which apparently abridges those rights may be absolute and still pass constitutional scrutiny in every case.

The legislature should note that one method to alleviate this problem has been used by Congress and by the Oregon legislature. Federal Rule of Evidence 412 and Or. Rev. Stat. sec. 40.210 (1987) both generally prohibit evidence of prior sexual conduct or reputation. However, both provisions also allow for this type of evidence to be admitted when it is "constitutionally required to be admitted."[122] Virginia and California also provide for the admission of evidence which is directly relevant to a complainant's credibility or motive to fabricate the charge.[123] These provisions allow for the fulfillment of the general policy against such evidence, while giving the courts the power to determine constitutional issues of admissibility on a case-by-case basis.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[122]Fed. R. Evid. 412(b)(1) (allows only the introduction of specific conduct evidence, not reputation evidence); Or. Rev. Stat. sec. 40.210 (2)(b)(C) (1987).

[123]Va. Code Ann. sec. 18.2–67.7B (1982); Cal. Evid. Code sec. 782 (West Supp. 1988).