STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Angela PULIZZANO, Defendant-Appellant.

Supreme Court

*No. 88–0010–CR. Argued March 7, 1990.—Decided June 12, 1990.*

(Also reported in 456 N.W.2d 325.)

For the plaintiff-respondent-petitioner the cause was argued by *Sharon Ruhly,* assistant attorney general with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief by *Matthew H. Huppertz* and *Carlson & Huppertz, S.C.,* Waukesha, and oral argument by *Matthew Huppertz.*

DAY, J. This is a review of that part of a decision of the court of appeals, *State v. Pulizzano,* 148 Wis. 2d 190, 434 N.W.2d 807 (Ct. App. 1988), which reversed an order and judgment of conviction for four counts of first degree sexual assault contrary to sec. 940.225(1)(d), Stats. 1985–86[1] entered by the circuit court for Kenosha county, the Honorable David M. Bastian, Judge. The

[1] **Sec. 940.225 Sexual Assault. (1)** FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony: . . . (d) Has sexual contact or sexual intercourse with a person 12 years of age or younger.

first question is: Was Ms. Pulizzano denied her constitutional rights to confrontation and compulsory process when the circuit court, pursuant to sec. 972.11(2), Stats. 1985-86[2] (the rape shield law), excluded evidence of a prior sexual assault experienced by one of the four complaining child witnesses, M.D., a seven year old. The second question is: Did the circuit court abuse its discretion when it permitted the prosecutor to argue in closing that because Ms. Pulizzano had been sexually abused as a child, she was more likely to commit the sexual assaults alleged in this case.

We conclude that Ms. Pulizzano was denied her constitutional rights to confrontation and compulsory process when the circuit court prohibited her from presenting evidence of the prior sexual assault of the child complainant for the limited purpose of establishing

[2] **Section 972.11 Evidence and practice; civil rules applicable.** . . . (2)(a) In this subsection "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style.

(b) If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

1. Evidence of the complaining witness's past conduct with the defendant.

2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

an alternative source for M.D.'s sexual knowledge. Accordingly, we affirm the decision of the court of appeals. Because the case is remanded for a new trial and the second question may again be an issue, we further conclude that the circuit court abused its discretion in permitting the prosecutor's closing remarks.

Ms. Pulizzano was charged with the four counts of first degree sexual assault on November 12, 1986. A preliminary examination was held on December 1, 1986, and she was bound over for trial. Prior to trial, Ms. Pulizzano requested the circuit court to permit cross-examination of M.D. regarding a prior sexual assault he had been the victim of two or three years earlier. Relying upon *State v. Padilla,* 110 Wis. 2d 414, 329 N.W.2d 263 (Ct. App. 1982), Ms. Pulizzano asserted that evidence of the prior sexual assault would be relevant to rebut the inference that M.D. could only have possessed the explicit sexual knowledge he did if he and the other children had been sexually assaulted by Ms. Pulizzano. To support her request, Ms. Pulizzano offered the report of William Freund, M.D., a psychiatrist who treated M.D. for emotional problems caused by the earlier incident. In his report, dated April 16, 1985, Dr. Freund noted that M.D. stated he was having dreams in which a woman and two others performed fellatio on him. Dr. Freund then elicited that M.D. had been sexually abused sometime in 1984 by three adults, including an "older" woman. The sexual assault included fondling and "sodomy of the penis," and because M.D. stated he was "hurt" in the incident, Dr. Freund opined that anal penetration may also have occurred. Dr. Freund's report further stated that M.D. was "very precocious sexually" and abnormally interested in sexual material. Dr. Freund noted that M.D. would simply walk up to other children

639

and ask them to perform fellatio on him. Ms. Pulizzano's counsel later made a formal offer of proof for the record.

The prosecutor contended that Ms. Pulizzano failed to make an adequate offer of proof under *Padilla* because she failed to show sufficient similarity between the two sexual assaults to establish an alternative source for sexual knowledge. The prosecutor did not dispute that M.D. was the victim of an earlier sexual assault. The prosecutor disagreed, however, that M.D.'s testimony regarding what occurred in the previous incident would be the same as what Dr. Freund reported. The proper procedure, the prosecutor asserted, was to have M.D. examined *in camera,* and Ms. Pulizzano had not moved the court to do so.

The circuit court denied Ms. Pulizzano's request on the basis the evidence was excluded by the rape shield statute, sec. 972.11, Stats. The circuit court reasoned that even an adequate offer of proof under *Padilla* does not grant a defendant an "absolute" right to introduce evidence which otherwise would be excluded by the statute. The circuit court held that the relevance of M.D.'s prior sexual assault, if any, was substantially outweighed by considerations of unfair prejudice, confusion of the issues and misleading the jury, contrary to sec. 904.03, Stats. 1985-86.[3]

At trial, M.D. testified that on August 30, 1986, Ms. Pulizzano had sexual contact with him and three other children, who ranged in age from three to five years old. Two were Ms. Pulizzano's own children, a daughter and

[3] **Section 904.03 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

a son, while the other was, like M.D., Ms. Pulizzano's nephew. M.D., who was the only one of the children to testify, alleged that the sexual contact included fondling, fellatio, anal penetration with an object, and digital vaginal penetration. Afterwards, M.D. asserted, Ms. Pulizzano threatened the children and told them not to tell anyone about the incident.

Ms. Pulizzano testified in her own defense and denied that she had sexual contact with the children. During the course of direct examination, Ms. Pulizzano asserted that she "would never ever do to those children what was done to me when I was little." While being cross-examined, Ms. Pulizzano further testified that as a child she had been sexually abused by her mother and sister, and that prior to that she had once been beaten and raped.

In reference to Ms. Pulizzano's testimony that she had been sexually abused as a child, the prosecutor in closing argued:

> I think that, ladies and gentlemen, it's more likely when something like this has happened to you in the past when you were younger for when you've grown up to perpetuate the same type of conduct on innocent children.

Ms. Pulizzano objected to the prosecutor's argument at the time it was made and subsequently moved for a mistrial on that basis. The circuit court denied both the objection and the motion for mistrial on the ground the inference the prosecutor had drawn was "a matter of common knowledge."

On April 2, 1987, the jury returned a verdict convicting Ms. Pulizzano of all four counts, and a judgment of conviction was subsequently entered.

Ms. Pulizzano appealed. The court of appeals reversed on the ground that Ms. Pulizzano's offer of proof established a "good faith" basis to cross-examine M.D. regarding the prior sexual assault. *Pulizzano,* 148 Wis. 2d at 195. The court of appeals reasoned that Dr. Freund's report showed sufficient similarity between the earlier incident and the acts Ms. Pulizzano was alleged to have committed to permit limited inquiry regarding the prior sexual assault in order to rebut the inference that M.D. could not have possessed the sexual knowledge he did unless the allegations here were true. *Id.* at 196. The court of appeals held that under the "balancing" test set forth by the United States Supreme Court in *Davis v. Alaska,* 415 U.S. 308 (1974), Ms. Pulizzano was denied her sixth amendment rights because sec. 972.11, Stats., excluded evidence of the prior sexual assault. *Pulizzano,* 148 Wis. 2d at 198-202. Ms. Pulizzano also appealed an order of the circuit court excluding evidence of an alleged prior untruthful allegation of sexual assault made by M.D. The court of appeals affirmed that order. *Pulizzano,* 148 Wis. 2d at 202-03. Because it remanded the case for a new trial, the court of appeals did not reach the issue of the propriety of the prosecutor's remarks in closing.

The State petitioned this court for review, which was granted. Ms. Pulizzano did not seek cross-review of that part of the court of appeals' decision which upheld the circuit court's order excluding evidence of the alleged prior untruthful allegation of sexual assault made by M.D. We affirm that part of the court of appeals' decision reviewed and remand the case for a new trial.

The evidence Ms. Pulizzano sought to present was that M.D. had been the victim of a prior sexual assault which involved acts similar to those alleged here. Ms.

Pulizzano does not contend here, nor did she in either court below, that evidence of the prior sexual assault is outside the scope of that barred by sec. 972.11, Stats. Both the circuit court and court of appeals held that the statute prohibited admission of the evidence. Although our review is independent of those courts, *State v. Sher,* 149 Wis. 2d 1, 8, 437 N.W.2d 878 (1989), we agree with that conclusion. The prior sexual assault M.D. experienced clearly constitutes "sexual conduct" as that term is defined in sec. 972.11(2)(a). As the evidence does not fall within any of the enumerated exceptions, the statute bars its admission. *Cf. State v. Mitchell,* 144 Wis. 2d 596, 619, 424 N.W.2d 698 (1988). The particular purpose for which admission is sought in this case, to establish an alternative source for sexual knowledge, does not alter that conclusion. One of the primary objectives of sec. 972.11 was to "reflect the judgment that most evidence about chastity has far too little probative value on the issue of consent to justify extensive inquiry into the victim's sexual history." *State v. Herndon,* 145 Wis. 2d 91, 104-05, 426 N.W.2d 347 (Ct. App. 1988); *State v. Vonesh,* 135 Wis. 2d 477, 484, 400 N.W.2d 508 (Ct. App. 1986). Evidence of a woman's prior sexual conduct was historically considered relevant to the issues of consent and general credibility. *State v. Gavigan,* 111 Wis. 2d 150, 156, 330 N.W.2d 571 (1982). The legislature did not intend, however, that sec. 972.11 should only be applicable with respect to those two issues. It is clear from the legislature's action following this court's decision in *Gavigan* that the legislature wanted the statute to have a broader application. In *Gavigan,* this court held that "the fact that evidence may not be admitted to show a complainant's prior sexual conduct does not necessarily, however, preclude its admission for another purpose." *Id.* at 157. The legislature responded by enacting sec.

972.11(2)(c) which stated that the statute "applied regardless of the purpose of the admission." Although that enactment was later declared unconstitutional, *see Herndon,* 135 Wis. 2d at 128–30, the legislature's response to *Gavigan* makes it plain that the purpose for which admission was sought was not the crux upon which the legislature determined that such evidence should be excluded. Rather, the statute was intended to reflect the more recent view that generally evidence of a complainant's prior sexual conduct is irrelevant or, if relevant, substantially outweighed by its prejudicial effect. *See State v. Penigar ,* 139 Wis. 2d 569, 585, 408 N.W.2d 28 (1987); *State v. Droste,* 115 Wis. 2d 48, 56, 339 N.W.2d 578 (1983); *Gavigan* 111 Wis. 2d at 168 (Heffernan, J., dissenting). The exceptions enumerated in sec. 972.11 are those limited circumstances in which evidence of a complainant's prior sexual conduct is generally viewed as probative of a material issue without being overly prejudicial. Other than in those limited instances, the plain language of sec. 972.11(2)(b) makes no distinction so far as the purpose for which the proponent of the evidence seeks its admission. *See Gavigan,* 111 Wis. 2d at 169 (Heffernan, J., dissenting). Consistent with the legislature's intent, that fact has no bearing upon the admissibility of evidence under the statute.

We recognize that by so interpreting sec. 972.11(2)(b), Stats., our construction of the statute amounts to the same prohibition declared unconstitutional in *Herndon,* where the court of appeals struck down sec. 972.11(2)(c). *Herndon,* 145 Wis. 2d at 129–30. We merely construe sec. 972.11(2)(b) as its plain language requires and as the legislature intended. We overrule the holding in *Herndon* that such a prohibition is unconstitutional on its face as violative of a defendant's right to present evidence.

██ The constitutional right to present evidence is grounded in the confrontation and compulsory process clauses of Article I, Section 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution. *See Washington v. Texas,* 388 U.S. 14, 17-19 (1967); *Pointer v. Texas,* 380 U.S. 400, 403-06 (1965). Article I, Section 7 provides in pertinent part:

> DECLARATION OF RIGHTS. . . . **Rights of accused.** SECTION 7. In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face; [and] to have compulsory process to compel the attendance of witnesses in his behalf . . ..

The sixth amendment provides in pertinent part:

> ARTICLE VI. In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . ..

██ The rights granted by the confrontation and compulsory process clauses are fundamental and essential to achieving the constitutional objective of a fair trial. *Chambers v. Mississippi,* 410 U.S. 284, 294-95 (1973). The two rights have been appropriately described as opposite sides of the same coin and together, they grant defendants a constitutional right to present evidence. *See* Comment, *Rape Shield Statutes: Constitutional Despite Unconstitutional Exclusions of Evidence,* 1985 Wis. L. Rev. 1219, 1256. The former grants defendants the right to "effective" cross-examination of witnesses whose testimony is adverse, *Davis,* 415 U.S. at 318, while the latter grants defendants the right to admit favorable

testimony. *Chambers,* 410 U.S. at 302; *see also* Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv. L. Rev. 567, 609 (1978). The right to present evidence is not absolute, however. *Chambers,* 410 U.S. at 295; *Droste,* 115 Wis. 2d at 58. Confrontation and compulsory process only grant defendants the constitutional right to present relevant evidence not substantially outweighed by its prejudicial effect. *See* Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade,* 70 Minn. L. Rev. 763, 806 (1986); Tanford and Boccino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U. Pa. L. Rev. 544, 557–60 (1980).

■ We conclude that sec. 972.11, Stats., on its face does not violate a defendant's constitutional right to present evidence. We agree with the legislature's determination that generally evidence of a complainant's prior sexual conduct is irrelevant or substantially outweighed by its prejudicial effect. It is a view generally accepted by courts, legislatures, and legal writers alike, and nearly every state has enacted similar laws excluding such evidence upon that rationale. Based upon that premise, the evidence sec. 972.11 excludes does not fall within the scope of that constitutionally protected by a defendant's right to present evidence. Such a construction is consistent with the legislature's express declarations that relevant evidence not substantially outweighed by its prejudicial effect is generally admissible. *See* secs. 904.02,[4]

---

[4] **Section 904.02 Relevant evidence generally admissible; irrelevant evidence inadmissible.** Although relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

and 904.03, Stats. Because on its face the statute does not implicate a defendant's fundamental rights to confrontation and compulsory process, to withstand a constitutional challenge it need only be rationally related to a legitimate state interest. *See Rape Shield Statutes: Constitutional Despite Unconstitutional Exclusions of Evidence,* 1985 Wis. L. Rev. at 1269. There can be no doubt that standard is satisfied here. The statute is rationally related to and serves several legitimate state interests. First, it promotes fair trials because it excludes evidence which is generally irrelevant, or if relevant, substantially outweighed by its prejudicial effect. Second, it prevents a defendant from harassing and humiliating the complainant. This is particularly important where, as here, the complainant is a child. Cross-examination has been recognized as one of the most potentially damaging aspects of a child's participation in a trial. *See* Note, *Victimizing the Child Victim: Vermont Rule of Evidence 807 and Trauma in the Courtroom,* 11 Vt. L. Rev. 631, 646 (1986). Third, the statute prevents the trier of fact from being misled or confused by collateral issues and deciding a case on an improper basis. Fourth, it promotes effective law enforcement because victims will more readily report such crimes and testify for the prosecution if they do not fear that their prior sexual conduct will be made public.

Despite the virtue of the general rule that such evidence is inadmissible, however, in the circumstances of a particular case evidence of a complainant's prior sexual conduct may be so relevant and probative that the defendant's right to present it is constitutionally protected. Section 972.11, Stats., as applied, may in a given case impermissibly infringe upon a defendant's rights to con-

frontation and compulsory process. *Cf. Chambers,* 410 U.S. at 294–303; *Davis,* 415 U.S. at 315–18. This court as well as the court of appeals has recognized, and the State concedes, that consistent with *Chambers* and *Davis* in some cases a defendant's confrontation and compulsory process rights might require that evidence of a complainant's prior sexual conduct be admitted, notwithstanding the fact that the evidence would otherwise be excluded by the rape shield law. *See e.g., Droste,* 115 Wis. 2d at 55–58; *Herndon,* 145 Wis. 2d at 128–29; *Padilla,* 110 Wis. 2d at 427–28. By enacting such a broad statute, the legislature "assumed the risk" that its application in a particular case may render it unconstitutional. *Vonesh,* 135 Wis. 2d at 500, n.3 (Gartzke, P.J., concurring). Ms. Pulizzano contends this is the circumstance here. Whether application of sec. 972.11 in this case deprived Ms. Pulizzano of her confrontation and compulsory process rights is a question of "constitutional fact" which this court may determine without deference to the lower courts. *State v. Woods,* 117 Wis. 2d 701, 715–16, 345 N.W.2d 457 (1984), *writ of habeas corpus granted on other grounds, Woods v. Clusen,* 605 F. Supp. 890 (E.D. Wis. 1985), *aff'd.,* 794 F.2d 293 (7th Cir. 1986).

The State contends that only Ms. Pulizzano's right to confrontation is at issue. We disagree. Ms. Pulizzano's right to compulsory process is plainly at issue. The record reflects that Ms. Pulizzano requested the circuit court to permit Dr. Freund to testify at trial. The circuit court denied the request. Ms. Pulizzano's counsel then requested the circuit court to include in her offer of proof that Dr. Freund would testify to the contents of his report.

Our first inquiry is whether Ms. Pulizzano established that the evidence she sought to admit, that M.D. had experienced a prior sexual assault similar to those

alleged here, was within the scope of that constitutionally protected by her rights to confrontation and compulsory process. The proper means for establishing that fact was an offer of proof. *Padilla,* 110 Wis. 2d at 429. Ms. Pulizzano complied with that procedure. The State contends that Ms. Pulizzano's offer of proof was insufficient, however, to establish a constitutional deprivation.

The State first argues the offer of proof failed to show that evidence of the prior sexual assault would be probative in establishing an alternative source for sexual knowledge. The State, relying upon *Padilla,* asserts that an *in camera* examination of M.D. was required to show the similarity between the two incidents. The State posits that showing cannot be made through evidence extrinsic to M.D.'s testimony, such as Dr. Freund's report. The State alternatively asserts that even if that showing can be made by extrinsic evidence, Dr. Freund's report failed to establish sufficient similarity between the prior sexual assault and those alleged here.

■

We disagree with the State that *Padilla* requires an *in camera* examination of M.D. as a prerequisite to Ms. Pulizzano's offer of proof. The court of appeals in *Padilla* only suggested that an *in camera* examination was one means by which the defendant in that case could have made an adequate offer of proof to support his contention. *Id.* at 430–31. The defendant there was convicted of having sexual contact with his girlfriend's ten-year old daughter. At trial, the defendant sought to introduce evidence of an alleged prior sexual assault the child suffered in order to rebut the inference that the child could not possess the explicit sexual knowledge she did unless the defendant sexually assaulted her. The defendant contended admission of the evidence was constitutionally required by *Davis.* The court of appeals

recognized the validity of the inference the defendant sought to rebut and posited that under *Davis,* the evidence was potentially required to be admitted. *Padilla,* 110 Wis. 2d at 427–28. The court of appeals affirmed the circuit court's exclusion of the evidence, however, because the defendant failed to make an adequate offer of proof showing that evidence of the alleged prior sexual assault would be relevant. *Id.* at 429–31. To gain admission of the evidence, the court of appeals held, the defendant should have made an offer of proof showing that the complaining witness engaged in a prior act of sexual relations with a man which gave her the same type of sexual knowledge she testified to concerning the present assault. *Id.* at 429. The court of appeals did assert in *Padilla* that the defendant could have made such a showing by requesting an *in camera* examination of the complaining witness. *Id.* at 430–31. But the court of appeals also noted that the defendant could have supported his offer of proof by any other type of evidence germane to his hypothesis. *Id.* We do not hold that an *in camera* examination is never required to determine the admissibility of this type of evidence. The peculiar circumstances of a particular case may well necessitate an *in camera* examination of the complainant. Whether that procedure is required is a matter of the circuit court's discretion. We hold only that in this case, an *in camera* examination was not required because Ms. Pulizzano's offer of proof was adequately supported by Dr. Freund's report. We disagree with the State that the showing of similarity between the two incidents must be made through the testimony of M.D. If the circumstances of the case allow it and that showing can be made by means of reliable extrinsic evidence, we find that method preferable to requiring a young child such as M.D. to go through the unnecessary trauma of recounting the trag-

650

edy of being victim to a prior sexual assault, particularly when it may subsequently be determined that the evidence is inadmissible at trial.

The State further argues that Ms. Pulizzano's offer of proof was insufficient because it failed to show several additional requirements set forth in *Herndon.* In *Herndon,* the defendant sought to introduce evidence of the complainant's prior sexual conduct to show consent and a motive for fabricating the charges against him. The evidence consisted of testimony that the complainant had been arrested twice previously on prostitution charges. To gain admission of the other crimes, wrongs, or acts evidence, the court of appeals held that the defendant was required to make a six-part showing in his offer of proof. *Id.* at 129. The court of appeals held that the defendant must show that the prior acts clearly occurred; that the acts closely resembled those of the present case; that the prior act is clearly relevant to a material issue; that the evidence is necessary to the defendant's case; that the probative value of the evidence outweighs its prejudicial effect; and that there was a related pattern of behavior. *Id* . at 122–23. The State asserts that in addition to the first two tests, which are the same as those set forth in *Padilla,* Ms. Pulizzano's offer of proof should have satisfied the third, fourth and fifth *Herndon* tests. The court of appeals in this case rejected the *Herndon* tests because it determined they were not applicable where, as here, consent was not at issue. *Pulizzano,* 148 Wis. 2d at 198–99.

We agree with the State that in a case of this type, a successful offer of proof must satisfy the first five of the six tests set forth in *Herndon.* Those five tests comport with the showing required by *Chambers* and *Davis* to establish a constitutional right to present evidence oth-

erwise excluded by a state evidentiary rule. *See Chambers,* 410 U.S. at 296-97, 301-02; *Davis,* 415 U.S. at 316-18. Although the third, fourth, and fifth *Herndon* tests were not explicitly listed in *Padilla* where the court of appeals stated the requirements for an adequate offer of proof, each of those factors were nonetheless required. *Id.* at 427-30.

We disagree with the State, however, that Ms. Pulizzano's offer of proof failed to satisfy the first five *Herndon* tests. An offer of proof "need not be stated with complete precision or in unnecessary detail but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt." *Milenkovic v. State,* 86 Wis. 2d 272, 284, 272 N.W.2d 320 (Ct. App. 1978). The State does not dispute that M.D. was victim to the prior sexual assault. Dr. Freund's report was incorporated into the offer of proof and it established that the prior sexual assault involved essentially the same types of acts alleged here, fondling and "sodomy of the penis," which includes fellatio, and "possibly" anal penetration. To the extent that anal penetration may only "possibly" have occurred, the State can challenge that assertion by questioning M.D., by cross-examining Dr. Freund, if he testifies, or by simply making that argument to the trier of fact. Evidence of the prior sexual assault is probative of a material issue, to show an alternative source for sexual knowledge, and is necessary to rebut the logical and weighty inference that M.D. could not have gained the sexual knowledge he possessed unless the sexual assaults Ms. Pulizzano is alleged to have committed occurred. The evidence is potentially prejudicial to the extent that it could be utilized by the trier of fact for other purposes, but that

threat can be negated by means of limiting instructions. The principal danger the evidence presents is the possible trauma questioning M.D. regarding the prior sexual assault could cause. But we cannot conclude in this case that the possible prejudice the evidence presents outweighs its probative value, particularly in view of the fact that the evidence can be presented to the trier of fact by means other than through testimony by M.D., either by having Dr. Freund testify or by simply admitting his report into evidence. We conclude that Ms. Pulizzano's offer of proof was sufficient. An offer of proof "ought to enable a reviewing court to act with reasonable confidence that the evidentiary hypothesis can be sustained and is not merely an enthusiastic advocate's overstated assumption." *Milenkovic,* 86 Wis. 2d at 284. We conclude Ms. Pulizzano's offer of proof satisfied that standard here.

Having concluded that Ms. Pulizzano established a constitutional right to present evidence of the prior sexual assault M.D. experienced, it remains to be determined whether the State's interests in prohibiting the evidence nonetheless require that it be excluded. In an appropriate case, even though a defendant's right to present certain evidence is constitutionally protected, that right may have to "bow to accommodate other legitimate interests in the criminal trial process." *Chambers,* 410 U.S. at 295; *see also* Note, *Constitutional Restraints on the Exclusion of Evidence in the Defendant's Favor: The Implications of Davis v. Alaska,* 73 Mich. L. Rev. 1465, 1482 (1975).

Courts and legal writers agree that the *Chambers* and *Davis* decisions set forth the standard to be applied for resolving questions pitting a state's interests in its evidentiary rules against a defendant's constitutional

right to present evidence. But the courts and legal writers have disagreed on how those decisions are to be interpreted. Two general views have emerged. The first view merely requires a general balancing between the state's and defendant's interests. *See e.g., Rape Shield Statutes: Constitutional Despite Unconstitutional Exclusions of Evidence,* 1985 Wis. L. Rev. at 1256. The second view provides that there must be compelling state interests to overcome the defendant's constitutional rights. *See e.g., Rape Shield Laws and the Sixth Amendment,* 128 U. Pa. L. Rev. at 562; *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv. L. Rev. at 580. We conclude the latter is the correct approach and that the traditional test of strict scrutiny must apply. Confrontation and compulsory process are fundamental rights expressly granted by the state and federal constitutions. In *Chambers* and *Davis,* those rights were described as "essential" and "vital." *Chambers,* 410 U.S. at 294; *Davis,* 415 U.S. at 320. The states' interests in both cases were "closely examined," *Chambers,* 410 U.S. at 295, but were not found compelling when weighed against the defendants' rights. In *Davis,* there were less restrictive alternatives available to the state that would have allowed it to protect its interests without violating the defendant's constitutional rights. *Id.* at 320. A general balancing would be proper only if the state's interests, like the defendant's, were constitutionally protected. But as important and legitimate as a state's interests in its evidentiary rules are, particularly with respect to the type of rule at issue here, those interests are not of a constitutional dimension.

Our second inquiry, then, requires that the state's interests be closely examined and weighed against the

force of the defendant's right to present the evidence, as measured by the first five *Herndon* tests. We conclude in this instance that Ms. Pulizzano's right to present the evidence must prevail. *Cf. Commonwealth v. Black,* 337 Pa. Super. 548, 487 A.2d 396, 400–01 (1985); *Summitt v. State,* 697 P.2d 1374, 1377 (Nev. 1985); *State v. Howard,* 121 N.H. 53, 426 A.2d 457, 462 (1981). As meritorious as the state's interests underlying sec. 972.11, Stats., are, and to the extent that they promote effective law enforcement we find them even greater than the state interests at stake in *Chambers* and *Davis,* we cannot conclude that they overcome Ms. Pulizzano's constitutional right to present evidence of the prior sexual assault. The inference that M.D. could not possess the sexual knowledge he does unless Ms. Pulizzano sexually assaulted the children greatly bolsters M.D.'s allegations. In order to rebut that inference, Ms. Pulizzano must establish an alternative source for M.D.'s sexual knowledge. Evidence of the prior sexual assault is therefore a necessary and critical element of Ms. Pulizzano's defense. Given the circumstances of this case, we find Ms. Pulizzano's right to present the evidence paramount. Similar to *Davis,* the State had other, albeit unappealing, means by which to pursue prosecution. The State could have had one of the other children testify.

We note that our conclusion that sec. 972.11, Stats., is unconstitutional as applied affects the validity of the statute only in this particular case. *Cf. Chambers,* 410 U.S. at 303; *Davis,* 415 U.S. at 319. Whether the statute is unconstitutional as applied in other instances is to be resolved on a case-by-case basis.

We conclude, therefore, that the case must be remanded for a new trial. We find the harmless error rule is inapplicable. The rule is subsumed by the finding that exclusion of the evidence deprived Ms. Pulizzano of a

necessary element of her defense. *See Constitutional Restraints on the Exclusion of Evidence in the Defendant's Favor: The Implications of Davis v. Alaska,* 73 Mich. L. Rev. at 1472. As the court of appeals noted, on remand the circuit court may in its discretion conduct a pretrial hearing to determine to what extent evidence of the prior sexual assault should be admitted so as to permit Ms. Pulizzano to establish her theory of an alternative source of sexual knowledge. Limiting instructions should be given to restrict the trier of fact's use of the evidence to that purpose. As Ms. Pulizzano's offer of proof sought to present only evidence of the prior sexual assault for that purpose, the inquiry should not include evidence of M.D.'s dreams and verbalizations. It is difficult to imagine circumstances more tragic than M.D. has already experienced at such a tender age, and to the extent possible caution should be taken to lessen any further trauma. In the exercise of its discretion, the circuit court, mindful of the important interests underlying the rape shield law, should limit admission of evidence of M.D.'s prior sexual conduct to the extent possible without unduly infringing upon Ms. Pulizzano's constitutional right to present the evidence.

To summarize, we conclude that to establish a constitutional right to present otherwise excluded evidence of a child complainant's prior sexual conduct for the limited purpose of proving an alternative source for sexual knowledge, prior to trial the defendant must make an offer of proof showing: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect. If the defendant makes that showing, the circuit court must then deter-

mine whether the State's interests in excluding the evidence are so compelling that they nonetheless overcome the defendant's right to present it. In making that determination, the state's interests are to be closely examined and weighed against the force of the defendant's right to present the evidence, as measured by the first five *Herndon* factors. In this case, we conclude Ms. Pulizzano's offer of proof was sufficient and that her right to present the evidence is paramount to the state's interests in excluding it. Accordingly, we affirm the court of appeals.

Because we remand the case for a new trial, the issue of the propriety of the prosecutor's remarks in closing argument may again arise and we therefore reach that question.

> While counsel has wide latitude in closing arguments, the control of the content, duration of the argument, and the form of the closing argument are within the sound discretion of the trial court.

*State v. Lenarchick,* 74 Wis. 2d 425, 457, 247 N.W.2d 80 (1976).

We conclude that the circuit court abused its discretion in permitting the prosecutor to argue that because Ms. Pulizzano had been sexually abused as a child, she was more likely to have committed the alleged sexual assaults in this case. We disagree with the circuit court that the inference drawn by the prosecutor, known as the "battering parent syndrome," *see generally* Bulleit, *The Battering Parent Syndrome: Inexpert Testimony as Character Evidence,* 17 U. Mich. J.L. Ref. 653 (1984), is a matter of common knowledge. The admissibility of evidence of the battering parent syndrome has been controversial among the courts. *See id.* at 656–57. If admis-

sible at all, however, the courts have been uniform that it must be supported by expert testimony, both with respect to the theory itself and whether the defendant exhibits character traits consistent with that profile. *See, e.g., Sanders v. State,* 251 Ga. 70, 303 S.E.2d 13, 16 n.3 (Ga. 1983); *State v. Loebach,* 310 N.W.2d 58, 64 (Minn. 1981).

We note that generally the State would be precluded from presenting evidence of the battering parent syndrome in its case-in-chief by sec. 904.04(1), Stats. 1985–86.[5] In this case, however, Ms. Pulizzano's testimony that she "would never ever do to those children what was done to me when I was little" opened the door to the State's rebutting her claim. *See* sec. 904.04(1)(a). We conclude that the prosecutor's argument in closing was improper, however, because it was unsupported by expert testimony. We offer no opinion as to whether evidence of the battering parent syndrome properly supported by expert testimony would be admissible in rebuttal. The absence of expert testimony in this case precludes our resolving that issue.

*By the Court.*—The decision of the court of appeals is affirmed; and cause remanded for a new trial and further proceedings not inconsistent with this opinion.

[5] **904.04 Character evidence not admissible to prove conduct, exceptions, other crimes. (1)** CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except: . . .

(a) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
. . .