COURT OF APPEALS
DECISION
DATED AND FILED

April 16, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP790-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF143

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JONATHAN T. DIFRANCES,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Ozaukee County: PAUL V. MALLOY, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jonathan T. DiFrances appeals a judgment of conviction for incest with his minor daughter and an order denying his postconviction motion seeking a new trial. DiFrances argues he was denied the constitutionally effective assistance of his trial counsel when his attorney, despite filing a motion under the now-defunct ***Shiffra*/*Green*** procedure,[1] failed to also investigate and obtain a years-earlier mental health evaluation that was known to DiFrances and in the possession of one of the relatives supporting his defense. DiFrances also argues the circuit court erroneously exercised its discretion by prohibiting him from presenting evidence that the victim had previously said that an uncle "made out" with her and requested lewd pictures of her, later claiming that the uncle "never did anything to me" after DiFrances's arrest. Given these alleged errors, DiFrances urges us to use our power of discretionary reversal to order a new trial.

¶2 We reject DiFrances's arguments. He has not demonstrated that his trial attorney was constitutionally deficient for failing to investigate the victim's years-earlier mental health evaluation under circumstances where the attorney had successfully obtained in camera review under the ***Shiffra*/*Green*** process based on his request for all of the victim's mental health records. Further, DiFrances has not established that the evidence regarding the victim's uncle was evidence of a "prior untruthful allegation of sexual assault" within the meaning of WIS.

---

[1] ***State v. Shiffra***, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), as modified by ***State v. Green***, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298, created a procedure by which a criminal defendant could obtain limited, in camera review of a victim's privately held privileged health records; that procedure was eliminated by ***State v. Johnson***, 2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d 174.

STAT. § 972.11(2)(b)3. (2023-24),[2] nor that he was constitutionally entitled to present such evidence at his trial. We therefore decline to exercise our power of discretionary reversal in this case and affirm.

## BACKGROUND

¶3      DiFrances was charged with incest based on his seventeen-year-old daughter Emily's allegations that between January and May 2019 he had engaged in sexual intercourse and repeated oral sex with her.[3]  At trial, Emily testified and the State presented incriminating text messages supporting her allegations.[4] DiFrances also testified at trial and suggested that Emily was fabricating the allegations.  He noted that Emily had access to his iPad, and he suggested that Emily had sent the incriminating messages to herself from his device and then deleted them from the iPad.  His defense was supported by testimony from his

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86, we use a pseudonym for the victim.

[4] On May 18, DiFrances texted Emily that he "woke up really wanting" "that thing you do that is better then how [his fiancée] does."  Emily declined this request unless DiFrances would buy her an iPad, which he said he could not do.

On May 20, DiFrances sent a text recalling her effort to "brib[e]" him, to which Emily responded that she didn't "feel like it right now."  DiFrances responded, "Lol, being a lesbian I don't see how you could ever feel like it."

A few hours later, DiFrances sent another message:  "God damnit!!!! Why do you have to be so good at that thing!!!!  Lol fine if I get you the iPad would you do it?  I don't know when I'll be off work early enough to do it but if I did it would you be willing then?"  Emily responded that she would, but it would be the last time.  DiFrances asked her if she was coming now and told her to lock the door behind her.  When Emily told him it would have to be quick, DiFrances responded, "Well guess we will see what kind of skills you have lol."

mother, Patricia, and his wife, Elizabeth, among others. The jury convicted DiFrances of incest.

¶4 Emily's allegations had come to light as a result of her disclosures to her therapist, who was a mandatory reporter. DiFrances and family members who were supporting his defense had told his trial attorney that Emily had problems with truthfulness, and those problems were being addressed in her therapy sessions.

¶5 Accordingly, DiFrances's trial attorney had submitted a pretrial *Shiffra/Green* motion seeking Emily's treatment records for the purpose of determining whether she had made previous false allegations of unwanted sexual contact, whether any external factors might have motivated her allegations against DiFrances, and whether her mental condition might impact her recollection, perception, propensity for untruthfulness, willingness to manipulate others, or credibility. Critically, counsel's request for the circuit court to order an inspection of "any and all records related to medical and mental health treatment [Emily] may have received in the State of Wisconsin or elsewhere."

¶6 Recognizing that cases such as DiFrances's were often "absolutely straight credibility battles," the circuit court granted DiFrances's motion for an in camera inspection and ordered the State to produce the records. After twice reviewing the records, the court denied their release. The court's examination revealed "nothing … that would be releasable under a *Shiffra/Green* type of motion. They are basically standard-type reports … [a]nd then the counselor fills in some [information] on the bottom."

¶7 DiFrances sought postconviction relief, asserting that despite his trial attorney's efforts under the *Shiffra/Green* framework, his attorney was

constitutionally ineffective for failing to discover a report issued following a psychological evaluation of Emily in 2013, when she was eleven years old.[5] The circuit court conducted a *Machner* hearing,[6] after which it denied the postconviction motion. DiFrances now appeals. Further facts will be set forth as necessary below.

## DISCUSSION

¶8 On appeal DiFrances raises two arguments. He first challenges the denial of his postconviction motion, asserting his trial counsel was constitutionally ineffective for failing to investigate and obtain Emily's 2013 psychological evaluation. Second, DiFrances argues the circuit court erroneously exercised its discretion by excluding evidence that showed Emily had falsely accused her uncle of "making out" with her years earlier and of requesting lewd photographs of her. Given these alleged errors, DiFrances also argues we should exercise our power of discretionary reversal to order a new trial. As set forth below, we reject these arguments.

   I.   *DiFrances's trial counsel did not perform deficiently by failing to investigate and obtain Emily's 2013 psychological evaluation outside of his other efforts to obtain Emily's mental health records.*

¶9 DiFrances first argues that after the circuit court denied him access to the victim's mental health records under *Shiffra/Green*, his trial attorney was constitutionally deficient for failing to further investigate and obtain a 2013

---

[5] The report was sealed in the circuit court. Its contents are not relevant to the disposition of the issues here, and therefore it is unnecessary to do more than note that DiFrances believes its contents cast doubt on Emily's general truthfulness.

[6] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

evaluation that may have cast doubt on Emily's credibility. The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.*

¶10  To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.*; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant fails to establish either prong, we need not address the other. *Savage*, 395 Wis. 2d 1, ¶25.

¶11  Here, we conclude DiFrances's trial attorney was not constitutionally deficient. To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

¶12  At the postconviction hearing, DiFrances's counsel testified that DiFrances and his fiancée had told counsel they attended therapy appointments

with Emily specifically to discuss her manipulative and lying behavior. Counsel knew, based on information from the family, that there were at least two recent treatment providers who might have information about Emily's truthfulness. Accordingly, DiFrances's trial attorney pursued Emily's mental health records through the *Shiffra*/*Green* framework.

¶13 It is undisputed that the 2013 evaluation was not produced as part of the *Shiffra*/*Green* process. But DiFrances's counsel did not know that. Counsel intentionally made the request for *all* of the victim's records, testifying that he meant his request to be all-encompassing because he did not know which treatment providers Emily had seen and he had no idea what might be in her records. He had contemplated that there might be "one nugget" in a "completely unrelated" treatment record or the records of an unknown specialist that might affect her credibility.

¶14 DiFrances has not established any reason why his trial attorney would have believed the in camera production of records was incomplete so as to pursue further investigation. Consistent with the *Shiffra*/*Green* process, his counsel testified he did not see the requests that were submitted to Emily's treatment providers, he did not know to whom the requests were directed, he did not know the time frame covered by the requests, and he did not see the records that were ultimately produced for in camera review. Though counsel was surprised at the circuit court's determination that there were no disclosable records, DiFrances has not supplied any basis to conclude his counsel was deficient for failing to discover that the 2013 evaluation was not part of the in camera review.

¶15    Nor is there any reason to believe counsel was aware, or should have been aware, of the 2013 evaluation outside the *Shiffra*/*Green* context.    The evaluation was apparently in Patricia's possession.    Emily had lived with Patricia between the ages of nine and sixteen, and Patricia had submitted an affidavit with the *Shiffra*/*Green* motion.    However, Patricia did not tell DiFrances's counsel about Emily's 2013 evaluation, nor was it mentioned in her affidavit.    At some point in the representation, Patricia had shown defense counsel a box of some other collection of records, but counsel had no reason to believe it contained mental health records that could be relevant to DiFrances's defense.    Rather, counsel testified it was possible the records consisted of merely school records collected from the ordinary course of life through seven years.    Counsel believed the most important aspect of his investigation was obtaining Emily's mental health records under the *Shiffra*/*Green* framework.

¶16    We disagree with DiFrances that the foregoing demonstrates a "textbook deficiency" based on failure to investigate.    DiFrances likens this case to *Williams v. Taylor*, 529 U.S. 362 (2000), asserting his attorney's failure to investigate was based on counsel's erroneous belief that he could only pursue the victim's mental health records through *Shiffra*/*Green*.    But regardless of whether the 2013 evaluation would have been admissible outside of that framework, it still does not render unreasonable counsel's expectation that all of the victim's mental health records had been provided for in camera review pursuant to his request.

II.    *The circuit court did not erroneously exercise its discretion when it excluded evidence of Emily's prior allegations of sexual impropriety with her uncle.*

¶17    DiFrances's trial counsel had learned from Patricia and Elizabeth that, around the time of Emily's disclosure about DiFrances, she had also claimed

she engaged in sexually inappropriate conduct with her uncle. Specifically, Emily had told Elizabeth that her uncle had recently requested a nude picture from her (in response to which she sent a topless photo) and that they had "made out" a few years prior. When DiFrances was arrested following Emily's report, Emily told Patricia the uncle "never did anything to me, leave him out of this."[7]

¶18 DiFrances's attorney regarded this information as showing that Emily had made a "prior false claim of sexual assault," and he requested that the corresponding evidence be admitted at trial. The circuit court, however, regarded the information as a collateral matter that risked a mini-trial on the issue of whether the uncle committed the alleged sexual impropriety. It excluded the evidence, reasoning the evidence was not particularly probative of whether DiFrances committed incest during the relevant time frame.

¶19 DiFrances challenges the exclusion of the "uncle" evidence, asserting it was admissible as a prior untruthful allegation of sexual assault that would have negatively impacted Emily's credibility. We review a circuit court's evidentiary decisions for an erroneous exercise of discretion. *State v. Ringer*, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448. We will uphold the court's ruling if it applied the correct legal standard, based its decision on the relevant facts, and reached a reasonable conclusion. *Id.*

---

[7] Patricia's affidavit includes an assertion that the victim accused her uncle of "similar activity" and, a few days later, "denied ever disclosing that information." Based on the investigative reports attached to the affidavit (and the parties' briefing), it is apparent the affidavit is referring to the alleged "making out" and photo exchange between the victim and her uncle, and not other sexual conduct.

¶20 The parties agree that, in an incest prosecution, the "uncle" evidence is presumed inadmissible pursuant to the legislature's determination that evidence of a victim's prior sexual conduct is "largely irrelevant 'or, if relevant, substantially outweighed by its prejudicial effect.'" *Id.*, ¶25; *see also* WIS. STAT. § 972.11(2)(b) (prohibiting "evidence concerning the complaining witness's prior sexual conduct").[8] DiFrances argues the evidence was admissible by virtue of an exception to this general prohibition for "[e]vidence of prior untruthful allegations of sexual assault made by the complaining witness." *See* § 972.11(2)(b)3.

¶21 Admissibility under WIS. STAT. § 972.11(2)(b)3. requires a threshold factual showing that the evidence constitutes a prior false allegation. ***Ringer***, 326 Wis. 2d 351, ¶29. The defendant bears the burden of producing evidence from which a jury could reasonably find that the victim made prior untruthful allegations of sexual assault. *Id.*, ¶31. The circuit court determines whether that evidence is sufficient as a matter of conditional relevancy. *Id.*, ¶32.

---

[8] The parties contend the "uncle" evidence was admissible only upon satisfying the three-part test articulated in *State v. DeSantis*, 155 Wis. 2d 774, 785, 456 N.W.2d 600 (1990), as modified by *State v. Ringer*, 2010 WI 69, 326 Wis. 2d 351, 785 N.W.2d 448. That three-part test incorporates the requirements of not only WIS. STAT. § 972.11(2)(b), which is applicable to incest prosecutions under WIS. STAT. § 948.06, but also WIS. STAT. § 971.31(11), which appears not to be. *DeSantis* and *Ringer* involved prosecutions for second-degree sexual assault and repeated sexual assault of a child, respectively—both of which crimes, unlike the one at issue here, explicitly fall within § 971.31(11)'s ambit.

Based on the foregoing, it is unclear to what extent the *DeSantis*/*Ringer* three-part test is applicable in the present case. Ultimately, we need not address that issue because, for reasons explained elsewhere in this opinion, we conclude the "uncle" evidence did not constitute a prior untruthful allegation of sexual assault under WIS. STAT. § 972.11(2)(b)3.—the statute explicitly applicable to incest prosecutions. *See Ringer*, 326 Wis. 2d 351, ¶28 (holding that a court need not discuss the other criteria if it concludes that the evidence is inadmissible under § 972.11(2)(b)).

¶22    Here, we conclude the evidence proffered by DiFrances did not constitute evidence of "prior untruthful allegations" within the meaning of WIS. STAT. § 972.11(2)(b)3.   Emily alleged specific sexual conduct with her uncle, consisting of "making out" and a request for lewd photographs.   Her purported "denial" of those allegations—consisting only of her statement that her uncle "never did anything to me, leave him out of this"—was highly ambiguous, both about what conduct she was referring to and whether it constituted a retraction of her past claims.   The ambiguity is only heightened by the fact that the "denial" was uttered immediately after DiFrances's arrest on suspicion of sexual intercourse, and was made to someone that did not know of Emily's prior assertions about sexual conduct with her uncle.

¶23    This conclusion appears consistent with the relevant case law.   In *DeSantis*, the complainant told her roommate she had been raped.   *DeSantis*, 155 Wis. 2d at 779.   The complainant later said the incident "didn't happen exactly the way she [the complainant] had said that it did," and she told a mutual friend that the incident merely involved someone walking up to her, putting his arm around her, and saying, "[H]ey, where's the party."   *Id.*   Our supreme court regarded both the report and the alleged retraction as both alleging "nonconsensual touching," which made the allegation and alleged retraction immaterial to the defendant's assertions of consent.   *Id.* at 790-91.

¶24    Although the circuit court in *DeSantis*—and, consequently, the supreme court—did not directly address the contours of the "prior untruthful allegation" criterion, the supreme court's decision demonstrates extreme skepticism that the evidence would qualify—labeling, among other things, the evidence "sketchy, vague, remote, disputed, and cumulative."   *Id.* at 792.   Indeed, *Ringer* recasts the *DeSantis* discussion as a conclusion that a "reasonable jury

11

could not find that the complainant made prior untruthful allegations." ***Ringer***, 326 Wis. 2d 351, ¶33.

¶25 Contrast this with the comparatively clear recantation in ***State v. Stroik***, 2022 WI App 11, 401 Wis. 2d 150, 972 N.W.2d 640, the exclusion of which justified a new trial. There, we concluded that the complainant had made a prior untruthful allegation of sexual assault after the victim, contrary to her statements to her mother, denied to social workers that her cousin had touched any part of her body. ***Id.***, ¶¶22, 57-58. The victim acknowledged telling her mother that her cousin had touched her intimate areas, but she told social workers she did not know why she had said that. ***Id.***, ¶22. Following the investigation, child protective services determined the allegation was unsubstantiated based on the victim's assertion "that the statement she made that led to the investigation was inaccurate and because CPS was aware of no other evidence to support the original allegation." ***Id.***

¶26 Putting this all together, Emily's statement that her uncle "never did anything to her" more closely resembles the nebulous alleged recantations in ***DeSantis*** and ***Ringer*** than the clear denial in ***Stroik***. It was non-specific, made to a person that had no knowledge of her prior claims, and uttered in a context that included her father being arrested as a result of her much different allegations of bargaining with her for sexual intercourse. In short, based on the evidence presented by DiFrances, no jury could reasonably find that Emily made a prior untruthful allegation of sexual assault against her uncle.

¶27 DiFrances argues that even if the evidence was not permitted by state evidentiary rules, he nonetheless was entitled to present it by virtue of his constitutional right to present a defense. A defendant has a constitutional right to

present evidence. *State v. Pulizzano*, 155 Wis. 2d 633, 645, 456 N.W.2d 325 (1990). This right does not, however, guarantee that a defendant will be able to present evidence of a victim's prior sexual conduct. *Id.* at 646. Whether the application of WIS. STAT. § 972.11 deprives the defendant of his or her rights in a particular case is a question of constitutional fact that we review de novo. *Pulizzano*, 155 Wis. 2d at 648.

¶28    The constitutional right to present a defense is subject to the application of evidentiary rules that themselves support the interests of fairness and reliability. *State v. Ochoa*, 2022 WI App 35, ¶20, 404 Wis. 2d 261, 978 N.W.2d 501. We conduct this balancing using a two-part test. *See State v. St. George*, 2002 WI 50, ¶¶18-20, 252 Wis. 2d 499, 643 N.W.2d 777. As a threshold matter, the defendant must demonstrate a constitutional right to present WIS. STAT. § 972.11 evidence by offering proof

> that prior acts clearly occurred; that the acts closely resembled those of the present case; that the prior act is clearly relevant to a material issue; that the evidence is necessary to the defendant's case; [and] that the probative value of the evidence outweighs its prejudicial effect….

*Pulizzano*, 155 Wis. 2d at 651. Once the defendant has made that showing, the State has an opportunity to demonstrate, under strict scrutiny, that its interests in prohibiting the evidence nonetheless require that it be excluded. *Id.* at 653.

¶29    DiFrances does not directly address the first part of the test, the five *Pulizzano* factors. Certain of his arguments nod in that direction; for example, much of his argument is directed to establishing the relevance of the "uncle" evidence vis-à-vis Emily's credibility. But most notably, nowhere does DiFrances attempt to tackle the similarity or necessity requirements. We could reject his

13

argument on this basis alone. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶30 DiFrances's claim fails on its merits as well. We are not persuaded the alleged sexual conduct with Emily's uncle—a single instance of "making out" years earlier and a request for lewd photographs—"closely resembled" Emily's allegations of repeated sexual intercourse with DiFrances. Indeed, in *Michael R.B. v. State*, 175 Wis. 2d 713, 736, 499 N.W.2d 641 (1993), our supreme court labeled it an "insupportable leap of reasoning to conclude that two or three minutes of undefined sexual touching … so closely resembles sexual intercourse [so] as to satisfy the *Pulizzano* test."

¶31 Further, Emily's purported recantation was highly ambiguous, and the circuit court's concerns about a mini-trial were well-founded based upon DiFrances's bare-bones pretrial offer of proof. Unlike the federal cases DiFrances cites in support of his arguments, this case does not involve an unequivocal admission by the victim to fabricating a prior instance of sexual assault. *See Redmond v. Kingston*, 240 F.3d 590, 591 (7th Cir. 2001) (the victim admitted to making up a story about a prior forcible rape and to manufacturing evidence by ripping her own clothes in an effort to garner attention from her mother); *Sussman v. Jenkins*, 240 F.3d 329, 336 (7th Cir. 2011) (the victim admitted to others that his prior allegation that he had been raped by his father was false and was motivated by his desire for attention; the victim had apologized to his father and his allegations were deemed unfounded by investigators).

*III. DiFrances has not demonstrated he is entitled to discretionary reversal.*

¶32 Last, DiFrances argues he is entitled to a new trial because the real controversy—whether Emily was telling the truth—was not fully tried. We

exercise of power of discretionary reversal under WIS. STAT. § 752.35 sparingly and only in exceptional cases. *State v. Cameron*, 2016 WI App 54, ¶31, 370 Wis. 2d 661, 885 N.W.2d 611. In light of our determination that there was no error, and based on the arguments presented in the appeal, we conclude this case is not an exceptional one warranting the exercise of our power of discretionary reversal.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.