In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3679

WALTER LEE GOUDY,

*Petitioner-Appellant,*

*v.*

JAMES BASINGER, Superintendent,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:06-cv-00098-LJM-JMS—**Larry J. McKinney**, *Judge.*

ARGUED DECEMBER 11, 2009—DECIDED MAY 3, 2010

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* An Indiana jury convicted Walter Lee Goudy of murder and attempted murder in December 1995. After exhausting the remedies available to him in Indiana courts, Goudy filed the instant habeas corpus petition in the district court under 28 U.S.C. § 2254. That court denied his petition. He timely appealed. At issue in this case is whether the government's failure to disclose three eyewitness statements that implicated one

of its main witnesses, and the failure of Goudy's counsel to introduce his brother's tape-recorded confession as evidence denied Goudy a fair trial.

## I. BACKGROUND

Walter Goudy was convicted for fatally shooting the driver of a car, Marvin McCloud, and wounding one of its passengers in Anderson, Indiana, a town forty miles northeast of Indianapolis. Goudy's conviction was based on the testimony of five eyewitnesses. The five were Damon Nunn, Jill Barclay, Jackie Barclay, LaTonya Young and Kaidi Harvell.

Nunn and Jill Barclay were passengers in McCloud's car. Nunn was in the front seat and was shot several times. Jill Barclay was in the backseat, but was not wounded. Both testified that McCloud pulled into a parking lot near an after-hours hangout and picked up Jill Barclay. They told the jury that as McCloud pulled out of the lot, Goudy and a shorter accomplice approached on either side of the car and fired several shots, killing McCloud; both testified that Goudy was the man on the passenger side of the car. Nunn said Goudy wore a brown or beige corduroy jacket, was around five feet eight to five feet ten inches tall, had an Afro hairstyle and wore a cap on his head. Jill Barclay said Goudy wore a dark sweatshirt, had a jeri-curl hairstyle that was partially covered by the hood from the sweatshirt. Both witnesses said they saw Goudy and three other men earlier in the evening at a nearby club called the Oasis.

Jackie Barclay, Jill's sister, and LaTonya Young testified that they witnessed the shooting from across the street. Jackie Barclay and Young had also been at the Oasis that night and both said they saw Goudy and three other men. After the Oasis closed, both went to the after-hours club. Jackie Barclay testified that she was talking with some friends outside the club when she saw Goudy and another man approach McCloud's vehicle. She said Goudy was around six feet tall and wore a dark jacket, dark pants or jeans, and had braids in his hair that were partially covered by his hood. The shooter on the driver's side was shorter, wore a "brown uniform," and had no facial hair. LaTonya Young told the jury that Goudy was the shooter on the driver's side, that he was around five feet eight inches tall with braids and a ponytail and wore no hat or hood. Young also testified in court that a recording of Goudy's car alarm was the same alarm she heard in the Oasis parking lot that night.

A roommate of Goudy's, Kaidi Harvell, was the state's primary witness and testified that he had been with Goudy in Anderson on the night of the shooting. He told the jury that he, Goudy and Goudy's two brothers, Romeo Lee and Lamont Thomas drove up from Indianapolis together that night to go to some bars. Harvell said that Goudy and Lee coveted the tires and rims on McCloud's car and had been talking about "jacking" them. After the group left the Oasis, they headed toward the after-hours club with other locals, where Goudy and Lee planned to steal McCloud's car. According to Harvell, he and Thomas were instructed to drive around the block while Goudy and Lee would steal

the car. Harvell told the jury that Goudy shot into the
driver's side of McCloud's car, and that he wore a brown
"prison coat," black cap and gloves. Lee shot into the
passenger side.

In addition to the evidence produced at trial, the gov-
ernment possessed three police reports that outlined
statements by Jill and Jackie Barclay, Young, Harvell, and
another witness (who did not testify at trial) named
Donzetta Clay. The first report describes a phone call
to police from Jill Barclay in which she said she saw one
of the gunmen at an Indianapolis mall. She stated that
she thought he kept looking at her "over his shoulder" and
that she later saw him outside "attempting to look at
her license plate." She later identified this man as
Harvell and said she was positive he was one of the
gunmen. The report additionally describes a photo
lineup viewed by the Barclay sisters and Young. All
three "positively and without hesitation" identified
Harvell as the gunman on the driver's side of McCloud's
car, and said he wore brown clothing. The second police
report details an in-person lineup viewed by Nunn, Jill
and Jackie Barclay, and Donzetta Clay. Clay and the
Barclay sisters identified Harvell; Nunn identified a non-
suspect as the shooter. The third report contains a state-
ment from Harvell indicating that he had been in con-
tact with one of Goudy's alibi witnesses. He says he
"talked with" her and that she "wants to change her story."

The government did not disclose any of these state-
ments to Goudy, even though they implicate Harvell and
conflict with Harvell's version of events; contradict

Young's statement at trial that Goudy was the driver's side shooter, and conflict with Nunn's description of the gunmen. Though it does not seem that the non-disclosure was intentional, none of this information was heard by the jury at Goudy's trial.

Goudy was convicted on December 21, 1995. Goudy's counsel learned of the police reports in October 1997, when the government disclosed the information they contained during Romeo Lee's subsequent murder trial. By that time, Goudy's direct appeal was pending in the Indiana Supreme Court, which denied his petition to reopen the record.

In addition to the undisclosed evidence contained in the police reports, the jury did not hear a tape-recorded confession given by Romeo Lee, Goudy's brother. While in prison in Arizona on another charge, Lee told Goudy's counsel and a private investigator that he and Harvell had been the two shooters. Lee said he and his brother were often confused for each other because of their similar looks. In his confession, Lee said Harvell was the gunman on the driver's side of McCloud's car and that he wore brown work clothing. Lee said that he was on the passenger side of the car and wore a black Raiders jacket. He said the shooting was the culmination of a verbal altercation between Harvell and McCloud that began at the Oasis earlier that evening.

When authorities transported Lee from Arizona to Indiana to testify at Goudy's trial, Lee's appointed counsel advised him to assert his Fifth Amendment right not to testify. When called, Lee refused to answer

any questions on cross-examination and the court struck what little testimony he had given. The prosecution later used the confession at Lee's own trial to convict him of the murders. Neither party offers an explanation for counsel's failure to introduce Lee's confession. While Goudy's post-conviction petition suggests the possibility that counsel was unaware that the confession was self-authenticating and admissible under Indiana Rule of Evidence 804(b)(3), the record is not clear as to exactly why counsel never attempted its admission. At any rate, the jury never heard Lee's version of events.

Goudy appealed his conviction, claiming among other things that the trial court erred in rejecting Goudy's request for an in-camera review of the police reports to determine whether they contained exculpatory information. The Indiana Supreme Court rejected Goudy's arguments. After receiving the police reports from Lee's counsel, Goudy filed a petition with the supreme court to supplement or expand the record on appeal. The supreme court denied Goudy's petition, but noted that "the documents . . . were not available to [Goudy's counsel] and that [he] acted with diligence." *Goudy v. State*, No. 48A02-0409-PC-740, at 3 (Ind. Ct. App. Jan. 12, 2006). The court suggested Goudy seek post-conviction relief.

Goudy then petitioned for post-conviction relief, asserting that the failure to disclose the evidence in the police reports was a violation of the rule in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Goudy also argued that the failure to introduce Lee's tape-recorded confession denied him a fair trial.

The Court of Appeals of Indiana denied Goudy's petition. The court held that Goudy waived his claim regarding the suppressed evidence because he could have asserted it on direct appeal. And while it labeled counsel's conduct "deficien[t]," the court did not engage in a detailed analysis of whether Goudy's counsel was constitutionally ineffective. *Goudy v. State*, No. 48A02-0409-PC-740, at 12 (Ind. Ct. App. Aug. 26, 2005). It instead rejected Goudy's second claim on the basis that he "suffered no prejudice" as a result of his counsel's failure to introduce Lee's recorded confession. *Id.*

However, when it subsequently rejected Goudy's petition for rehearing, the appeals court acknowledged that it had erred in holding that Goudy waived his *Brady* claim. *Goudy v. State*, No. 48A02-0409-PC-740, at 3 (Ind. Ct. App. Jan. 12, 2006). It acknowledged the fact that Goudy's counsel could not have pressed that claim on direct appeal because he was unaware that the suppressed statements existed. *Id.* Addressing whether the suppression of the statements denied Goudy a fair trial, the court rejected the argument that the evidence, "even if made available to Goudy prior to trial, would have led to a different result." *Id.* at 12. Goudy appealed to the Indiana Supreme Court, which declined to hear the case. Goudy then petitioned the district court for a writ of habeas corpus, which was also denied.

## II. DISCUSSION

Goudy presses two claims on appeal. He argues that the prosecution violated his right to a fair trial under

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), by failing to turn over witness statements identifying Kaidi Harvell as one of the shooters and suggesting that Harvell spoke with one of Goudy's alibi witnesses. Goudy also claims that his counsel's failure to introduce Romeo Lee's recorded confession at trial deprived him of the effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The district court denied both claims and we review de novo.

### A. *Brady* Claim

Goudy had to establish two things to prevail on his *Brady* claim in the state court proceeding. He first had to show that the government failed to give him evidence favorable to his defense, that would tend to show his innocence or which could be used to impeach witnesses at trial. *Brady*, 373 U.S. at 87. It matters not whether the defense requested the information or the government's failure was inadvertent; the government's duty is to turn over all exculpatory information in its possession. *United States v. Agurs*, 427 U.S. 97, 106-07 (1976).

Goudy also had to show that the evidence was material to an issue at trial; that had the evidence been disclosed to the jury at trial, there is a reasonable probability that the result would have been different. *Strickler v. Greene*, 527 U.S. 263, 280 (1999); *United States v. Bagley*, 473 U.S. 667, 682 (1985). The reasonable probability standard for materiality of suppressed evidence is less rigorous than a preponderance of the evidence standard in that a petitioner need only show that the

new evidence undermines confidence in the verdict. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). When the cumulative effect of all the suppressed information is to undermine confidence in the verdict, such a reasonable probability exists. *See id.*

Addressing the first *Brady* element, the Indiana court found that the government suppressed information during Goudy's trial and that the information was exculpatory. We agree with the court's conclusion. The three police reports not disclosed until after trial contain several pieces of information which tend either to exculpate Goudy or impeach witnesses against him. The eyewitness statements identifying Harvell as the gunman impeach his testimony and exculpate Goudy by suggesting he was not one of the shooters. The statements also impeach Nunn's description that the passenger side gunman wore a brown work outfit; and impeach Young's testimony that she saw Goudy on the driver's side of McCloud's car. And they reveal that Donzetta Clay identified Harvell as one of the gunmen.

On post-conviction review, the Indiana court held that had this information been available at trial, Goudy could have impeached the state's witnesses in several respects, demonstrated that witnesses misidentified him, and bolstered his story that he was not at the scene of the shooting.

But the court concluded that, though the government failed to turn over favorable information, the suppressed evidence was not material. Because this case comes to us on habeas review from a state court decision,

our review of that conclusion is limited by 28 U.S.C. § 2254(d). Federal courts are not permitted to grant a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). A state court unreasonably applies federal law if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a principle to a context in which it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Essentially, Goudy must show that the Indiana court's application of *Brady* was not just incorrect, but also unreasonable, "that is, lying well outside the bounds of permissible differences of opinion." *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008) (internal citation omitted). Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence. *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003).

Using this deferential standard of review, we look first to the standard of proof the state court followed in assessing whether the suppressed evidence was material to Goudy's guilt or innocence.

The Supreme Court has clearly established that the standard for determining whether suppressed evidence is material is whether the cumulative effect of the new

evidence creates a reasonable probability of a different result at trial. *Kyles*, 514 U.S. at 434. "A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Id.* While the state court initially identified this as the correct legal principle for determining whether suppressed evidence was material, its statements repeatedly dismissing the materiality of evidence on the basis that it "does not mean that Goudy *was not* the other shooter," miss the point. *Goudy v. State*, No. 48A02-0409-PC-740, at 10 (Ind. Ct. App. Jan. 12, 2006). At least three times, the court rejected the materiality of individual pieces of evidence on the basis that the evidence did not conclusively establish Goudy's innocence. The court first rejected the materiality of the identifications of Harvell as the shooter in the brown clothing, saying it "does not mean that Goudy *could not have been* the other shooter" and "does not mean that Goudy *was not* the other shooter." *Id.* at 7 (emphasis added). The court then explained that the reason Goudy received a fair trial is because he could not show that the evidence, "even if made available . . . prior to trial, would have led to a different result." *Id.* at 12. So while the Indiana court identified the correct legal principle—that Goudy had to demonstrate a reasonable probability that the new evidence would lead to a different result—the statements quoted above would require that Goudy prove the new evidence necessarily "would have" established his innocence. Placing this burden on Goudy was "diametrically different," *Taylor*, 529 U.S. at 406, than the clearly estab-

lished principle laid out in *Kyles*, 514 U.S. at 434, *Bagley*, 473 U.S. at 682, and *Agurs*, 427 U.S. at 112-14.

In addition to holding Goudy to a wrong standard of proof on the materiality element of his *Brady* claim, the Indiana court dismissed each piece of suppressed evidence in seriatim, rather than assessing its cumulative effect as required by *Kyles*, 514 U.S. at 440. When a court's opinion repeatedly dismisses "particular items of evidence as immaterial" it "suggest[s] that cumulative materiality is not the touchstone." *Id*. In its opinion, the Indiana court did not recognize cumulative materiality as the relevant standard. *See Goudy v. State*, No. 48A02-0409-PC-740, at 2-12 (Ind. Ct. App. Jan. 12, 2006). An example of this seriatim analysis is the state court's dismissal of any impeaching effect the identifications of Harvell might have had on his credibility. According to the Indiana court, the jury knew Harvell "had a motive to implicate Goudy" because it knew Harvell was "charged for being involved in the killing[]," and that the jury heard Goudy's counsel accuse Harvell of being one of the gunmen. *Id.* at 9. The jury heard five witnesses say they saw Goudy firing a gun into McCloud's car, but four of them did not agree on Goudy's height, which side of the car he was on, whether he wore a hat and whether he wore a dark jacket and jeans or a full brown work uniform. Harvell even told the jury that Goudy was the driver's side gunman in the brown uniform. But the jury never heard that three of the four witnesses had previously identified Harvell and said he was the gunman wearing brown clothing on the driver's side of McCloud's car. And the jury heard

Nunn say that Goudy was the passenger side gunman and wore a brown jacket. The jury did not hear that four witnesses identified Harvell as the brown-clad gunman and said he was on the driver's side of McCloud's car, or that when he viewed the same lineup, Nunn identified a non-suspect, rather than Harvell. Yet the court "failed to see how the reports could have been used to impeach Mr. Nunn's testimony." By not identifying the cumulative materiality standard required by *Kyles*, 514 U.S. at 440, and analyzing suppressed evidence in isolation, the court deprived Goudy of the full exculpatory value of this evidence and unreasonably applied clearly established law.

In short, Goudy has shown that the state court's decision on his *Brady* claim involved an unreasonable application of clearly established federal law. Rather than applying a "reasonable probability" standard for materiality of suppressed evidence as required by *United States v. Bagley*, 473 U.S. at 682, the court unreasonably required Goudy to show that the suppressed evidence would establish his innocence. The court did not recognize *Bagley*'s requirement that the effect of suppressed evidence be assessed cumulatively. Clearly established federal law entitles Goudy to have the exculpatory evidence considered under these standards.

### B.   Ineffective Assistance of Counsel

In addition to his *Brady* claim, Goudy asserts that the Indiana courts unreasonably rejected his claim that he was denied effective assistance of counsel when his attorney

failed to lay a foundation to introduce Romeo Lee's recorded confession. Under *Strickland*, 466 U.S. at 687, a petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms. *Id*. Second, and similar to the *Brady* materiality inquiry, he has to establish that a reasonable probability exists that, "but for" those errors, the outcome of the trial would have been different. *Id*.

The state post-conviction court described counsel's performance as "deficien[t]," stating that he "should have sought to admit this evidence," but it never thoroughly discussed the first *Strickland* element. Instead, it based its holding on the idea that "Goudy suffered no prejudice as a result." The state court found Lee's confession not material to Goudy's guilt or innocence because it was not credible and was overwhelmed by the testimony of the other eyewitnesses. We cannot say this determination was unreasonable. Lee "refused to verify the accuracy of the statement" at trial. Though Goudy's counsel called him as a witness, he only questioned Lee about the party at Goudy's house. He asked nothing about the details of the shooting or Harvell's role in it, and never sought to introduce the tape. When the prosecution sought the tape's admission to impeach a minor detail in Lee's story, Goudy's attorney objected. In light of counsel's diligence in seeking out Lee and obtaining the confession, his overt steps to avoid this aspect of Lee's story at trial justify the Indiana court's view that it was incredible.

In any event, since the granting of the writ will compel the state to either retry Goudy (with new counsel) or dismiss the charges, the question as to whether the decisions and actions of his first attorney were appropriate enough to provide Goudy with reasonable counsel will be of no moment. In spite of our abstract interest, we avoid the temptation to ponder the matter. That is to say, because we hold that the *Brady* error alone denied Goudy a fair trial, we need not reach the question of whether he also was denied the effective assistance of counsel.

## III. CONCLUSION

For the reasons stated above, we conclude that the Court of Appeals of Indiana unreasonably applied federal law when it determined that prior statements of identification by witnesses the government suppressed did not create a reasonable probability of a different result in Goudy's trial. Therefore, we REVERSE the district court's holding and remand with instructions to grant Goudy's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. If the state elects not to retry Mr. Goudy within 120 days, he shall be released from confinement.