**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted November 4, 2010[*]
Decided November 9, 2010
Amended November 9, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 10-1132

| | |
|---|---|
| REINALDO C. ACOSTA, | Appeal from the United States District |
| *Petitioner-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 06-C-0823 |
| | |
| MICHAEL THURMER, | Charles N. Clevert, Jr., |
| *Respondent-Appellee.* | *Chief Judge.* |

**O R D E R**

Reinaldo Acosta and another man forced their way at gunpoint into an apartment in Milwaukee, Wisconsin, and robbed the tenant and her three male guests. Acosta then raped the woman while his cohort, who pleaded guilty but did not testify at Acosta's trial, watched over the men. On his way out Acosta shot one of the men. A Wisconsin jury found him guilty of armed robbery, kidnaping, sexual assault, and reckless injury. He was

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

sentenced to 48 years' imprisonment. The district court denied his petition for a writ of habeas corpus, see 28 U.S.C. § 2254, but granted a certificate of appealability permitting Acosta to appeal his claims that he was denied a fair trial because the judge did not let him question the rape victim about her misdemeanor convictions for prostitution and allowed the shooting victim to identify him at trial. By discussing his double-jeopardy claim in his brief on appeal, Acosta impliedly asks us to expand the certificate of appealability to include a double-jeopardy claim, but we decline. We affirm the judgment.

At trial it was undisputed that late one evening in September 2001, two armed, masked men forced their way into Denise Collins's apartment while she was at home with her boyfriend, her brother, and a friend, Anthony Howell. After robbing the victims, one of the intruders raped Collins in her bedroom while the other guarded the men in the living room. Both of the assailants removed their masks while in the apartment, and before exiting one of them shot Howell in the thigh. None of the victims claimed to know the intruders, but Acosta was linked to the rape through DNA. Collins testified at trial that he raped her, and Howell identified him as the shooter.

In Wisconsin a witness can be asked if she has any convictions and, if so, how many, but in general the *types* of convictions cannot be used to impeach the witness's credibility. WIS. STAT. §§ 904.04, 906.09; *State v. Payano*, 768 N.W.2d 832, 850-52 (Wis. 2009) (citing *State v. Sullivan*, 576 N.W.2d 30 (Wis. 1998)). Acosta nonetheless argued that he should be allowed to elicit from Collins that her criminal history included convictions for prostitution, none of which involved Acosta. Defense counsel represented that Acosta and Collins knew each other before the home invasion because Acosta had been paying her with drugs and money for consensual sex. One of their "drug dates," Acosta would testify, had occurred earlier on the day of the home invasion and explained the presence of his DNA. Acosta's theory was that Collins had falsely identified him as one of the assailants because she was angry that he shorted his payment for their sex earlier that same day. The trial court denied Acosta's request, reasoning that inquiry into the nature of the prostitution convictions (none of which involved an allegation of false accusation) was precluded by Wisconsin's rape-shield statute, see WIS. STAT. § 972.11(2)(b). The court permitted Acosta to question Collins about the number of her prior convictions and to cross-examine her about whether they had a sexual history, including "drug dates." The court also permitted Acosta to question Collins about her purchase and use of drugs on the day of the crime.

Acosta was tried in December 2003. Well before then, Howell had identified him at a preliminary hearing in November 2001—about six weeks after the home invasion—and again during a February 2002 lineup. Acosta's counsel was not present at the lineup. As a result, Acosta moved in limine to suppress the lineup identification and to prevent Howell

from identifying him at trial. Acosta argued that a trial identification would be tainted both by the lineup and by what he characterized as a suggestive confrontation at the preliminary hearing. The trial judge excluded evidence of the lineup identification since the state conceded that Acosta had not waived his right to counsel and yet the lawyer was not present. On the other hand, the court concluded that, even if the preliminary hearing had been suggestive because Acosta was dressed in a jail jumpsuit and was seated alone with his lawyer when he was singled out, Howell had an independent basis for his identification. The prosecutor did not make use of the preliminary-hearing identification, however, and the jury learned about it only because Acosta introduced it in trying to convince the jury that Howell identified him at trial only because of the suggestiveness of the preliminary hearing.

On direct appeal from his convictions, Acosta argued, among other claims, that he was denied a fair trial because the trial judge (1) excluded evidence that Collins had been convicted of prostitution and (2) permitted Howell to identify him at trial despite the lineup and the suggestiveness of the preliminary hearing. The Wisconsin Court of Appeals affirmed the convictions, and the Wisconsin Supreme Court denied review. Acosta then filed his § 2254 petition.

We review the district court's decision denying the petition de novo and its factual findings for clear error. *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). Federal courts may grant relief under § 2254 only if the state court's determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); see *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010). We defer to the decision of the last state court to address the merits, and presume correct its factual findings unless Acosta rebuts that presumption with clear and convincing evidence. *Goudy*, 604 F.3d at 399.

On appeal Acosta again argues that the trial court erred by excluding evidence that Collins had been convicted of prostitution. Acosta maintains that the right to confrontation trumps Wisconsin's rape-shield statute, see WIS. STAT. § 972.11(2); *State v. St. George*, 643 N.W.2d 777, 783 (Wis. 2002), which protects victims of sexual assault by preventing introduction of evidence of prior sexual activity.

The Wisconsin Court of Appeals reasonably applied established federal law in concluding otherwise. The court cited the balancing test articulated in *State v. Pulizzano*, 456 N.W.2d 325, 333 (Wis. 1990), which requires a defendant seeking to overcome the rape-shield statute to satisfy a test that begins with a showing that the prior sexual activity

occurred, the conduct closely resembled the present case, the conduct is relevant to a material issue, the evidence is necessary to the defendant's theory of defense, and the probative value outweighs any prejudicial effect. *Id.*; *St. George*, 643 N.W.2d at 782. Only if this showing has been made does the trial court then examine whether a compelling state interest overcomes the defendant's right under the Confrontation Clause to present the evidence. *Pulizzano*, 456 N.W.2d at 335.

Applying this test, the Wisconsin Court of Appeals upheld the trial court's determination, concluding that Acosta was able to present his trial theory by confronting Collins with the *number* of her prior convictions, but not the *nature* of those convictions because the underlying facts did not suggest that Collins had ever falsely accused someone of rape and thus did not satisfy the second *Pulizzano* factor. Though the Supreme Court has not directly addressed this issue, see *Hammer v. Karlen*, 342 F.3d 807, 812 n.6 (7th Cir. 2003); *Pack v. Page*, 147 F.3d 586, 589 (7th Cir. 1998), we have nonetheless noted before that the *Pulizzano* balancing test is consistent with governing federal law, see *Dunlap v. Hepp*, 436 F.3d 739, 742 (7th Cir. 2006). Moreover, Acosta was able to present his defense to the jury with little restriction; the trial court permitted him to question Collins about whether they had a prior sexual relationship and about her drug use. We cannot conclude that the Wisconsin court's analysis was unreasonable.

Nor can we conclude that the appellate court's analysis of Acosta's suggestive-identification claim was unreasonable. Acosta renews his argument that the trial judge should not have permitted Howell to identify him before the jury. His argument is two-fold: that the circumstances of Howell's initial identification at the preliminary hearing in November 2001 rendered his identification at trial unreliable, and that Howell's trial identification was further tainted by the lineup conducted without counsel.

But the record reflects that the Wisconsin Court of Appeals identified the correct standard to address both of these contentions. The court employed the test identified in *United States v. Wade*, 388 U.S. 218, 241 (1967), and *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972), to determine whether Howell had an independent basis to identify Acosta at trial. A petitioner who contends that an in-court identification (in this case Howell's identification at trial) violated his right to due process must demonstrate that a prior, unduly suggestive procedure tainted that identification. *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1045 (7th Cir. 2003). If the petitioner meets that burden, the reviewing court must then decide whether the in-court identification remained sufficiently reliable, under the totality of the circumstances, to avoid potential misidentification. *Id*. In making this determination, the court should consider several factors including any opportunity the witness had to observe the crime, the accuracy of any prior description of the criminal by the witness, any prior

misidentification by the witness, the lapse of time between the crime and the contested identification, and the facts disclosed regarding the conduct of the contested lineup. *Wade*, 388 U.S. at 241; *Gregory-Bey*, 332 F.3d at 1045; see also *Biggers*, 409 U.S. at 199-200.

Applying the factors identified in *Wade,* the Wisconsin Court of Appeals reasonably concluded that Howell had ample opportunity to observe Acosta during the crime (first from 18 to 22 feet away and then from just a few feet away before Acosta shot him) and that Howell's description of Acosta just after the crime was substantially consistent with his physical characteristics (on the night he was shot Howell described the assailant as 5′ 5″ or 5′ 6″ and 145 to 150 pounds; Acosta was 5′ 7″ and 160 pounds at the time of his arrest). The court then considered Acosta's argument that too much time had elapsed between the crime and Howell's preliminary-hearing identification but concluded that the six-week gap, while significant, was not too long to permit a finding that Howell had an independent basis to identify Acosta. See *Biggers*, 409 U.S. at 201 (concluding that identification occurring 7 months after crime was reliable); *Mills v. Cason*, 572 F.3d 246, 252 (6th Cir. 2009) (9-month delay); *McFowler v. Jaimet*, 349 F.3d 436, 450 (7th Cir. 2003) (29-month delay between crime and identification at trial).

AFFIRMED.